C. W. MEINHARDT *v.* MARY ELIZABETH VAUGHN.

(*Nashville.* December Term, 1928.)

Opinion filed May 25, 1929.

W. G. MALLON and B. H. HAGEY, for Meinhardt.

SYDNEY F. KEEBLE and A. W. STOCKWELL, for Vaughn.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

In this suit for personal injuries, inflicted by the minor son of the defendant, while driving a motorcycle on a Nashville Street, judgment was rendered against

the father in application of the "family-purpose" doctrine, which prevails in Tennessee. *Schwartz* v. *Johnson*, 152 Tenn., 586, and *King* v. *Smythe*, 140 Tenn., 221. The circuit judge and the Court of Appeals have concurred in the view that the facts of this case bring it within that doctrine. The petition of defendant for *certiorari* has been granted and argument heard.

· While there are numerous holdings to the contrary, the family-purpose doctrine has been quite generally approved. In 20 R. C. L., 629, it is said: "Where a parent purchases an automobile for the use of his family, a child using it for his own pleasure is held by the weight of authority to be the servant of his parent in doing so, and if, in the course of his travels, he negligently manipulates the machine, the act is within the scope of his employment." To the same effect see Berry on Automobiles, par. 653; Blakemore's Babbit on Motor Vehicles (2 Ed.), par. 902. Supporting decisions are cited by these text book authorities.

It is urged that this case is to be so distinguished on its facts from *King* v. *Smythe, supra,* wherein the doctrine was first adopted in this State, as to take it out of that doctrine. These points of distinction are stressed: (1) In that case an automobile was the instrumentality. Here a motorcycle. (2) There the machine had been purchased for the use of a family of several. Here for the use of this son only. (3) There the family purpose was pleasure and recreation only, while here it was chiefly for transportation to and from school. (4) There the father was the unquestioned and exclusive owner, while here it is insisted that the machine was the property of the son. Do these differences in the facts go to the principles applicable?

(1) First, as to the character of the instrumentality. In *King* v. *Smythe,* Mr. Justice LANSDEN said: "It is true that an automobile is not a dangerous instrumentality so as to make the owner liable, as in the case of a wild animal loose on the streets; but, as a matter of practical justice to those who are injured, we cannot close our eyes to the fact that an automobile possesses excessive weight, that it is capable of running at a rapid rate of speed, and when moving rapidly upon the streets of a populous city, it is dangerous to life and limb and must be operated with care." All of this is equally true of a motorcycle.

(2) And, the opinion proceeds, "If an instrumentality of this kind is placed in the hands of his family by a father," or, as truly, if placed in the hands of one member of his family, "for (3) the family's pleasure, comfort and entertainment," or even more certainly for the family's use in transportation to and from school, "the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by so doing, as a general rule, can substantial justice be attained. A judgment for damages against an infant daughter or an infant son, or a son without support and without property, who is living as a member of the family would be an empty form."

It is plausibly insisted that the case of a single minor member of the family, going to school and driving a motorcycle, does not differ in its applicability to the reasoning and principles laid down in *King* v. *Smythe,* from that of an automobile driven by an adult son of a family of several out for pleasure; that the reasoning of Mr. Justice LANSDEN applies here; that as the opinion proceeds this becomes even more clear:

"The father, as owner of the automobile and as head of the family, can prescribe the conditions upon which it may be run upon the roads and streets, or he can forbid its use altogether. He must know the nature of the instrument and the probability that its negligent operation will produce injury and damage to others. We think the practical administration of justice between the parties is more the duty of the court than the preservation of some esoteric theory concerning the law of principal and agent. If owners of automobiles are made to understand that they will be held liable for injury to person and property occasioned by their negligent operation by infants or others who are financially irresponsible, they will doubtless exercise a greater degree of care in selecting those who are permitted to go upon the public streets with such dangerous instrumentalities. An automobile cannot be compared with golf sticks and other small articles bought for the pleasure of the family. They are not used on public highways, and are not of the same nature of automobiles."

Noting the concluding sentence quoted, it is true that motorcycles, like automobiles, *are* used on public highways, and *are* of the same nature of automobiles. They are propelled alike by gasoline motors, are capable of even swifter motion, as deadly in impact, as difficult to evade, and carry from one to three passengers quite commonly.

But (4) it is urged that in *King* v. *Smythe* the father was the owner, while here the ownership was in the minor son. It must be conceded that the registration of the machine in the name of the son makes a *prima-facie* case of ownership, and there is evidence that as between them the father and son so recognized it. But the proof is that the machine was sold to the father and

that his money paid for it. Also, that he supplied the money with which to operate it. Is it materially controlling, if conceded, that the bare title was vested in the son, when the father "furnishes" it for the son's use, and "furnishes" the means of its upkeep and operation, and also "furnishes" the permission to the son essential to his use of it on the public streets? Does this doctrine rest on the issue of bare title?

It is true that Mr. Justice LANSDEN refers to the father as "owner," and to his "ownership," but it is significant that in this connection he stresses "the fact that it was being driven by a member of his family *with his permission,* coupled with the further fact that the automobile was *purchased and maintained for this purpose,*" and he holds that this made a *prima-facie* case of liability. And looking back to the quotation already given, it will be seen that the learned writer said, "If an instrumentality of this kind is placed in the hands of his family by a father,"—*the placing of it in the hands* of these irresponsible members of his family is the point stressed. The furnishing, maintenance and control are apparently the essential predicates of liability of the responsible parent. If this responsibility may be evaded by merely giving over to an irresponsible minor child the title to such an instrumentality purchased by a father for a family purpose, maintained by him, and used on the public streets with his permission, even by his direction, then every evil consequence graphically portrayed by Mr. Justice LANSDEN will be invited. All that will be necessary, in any case, as a practical proposition, will be for the defendant to testify that, although he purchased it for this purpose, and expressly authorized its use, and provided the funds for its maintenance and operation, he had somehow, at sometime, or in some way given it

to the offending son. In a case recently decided by the Supreme Court of Colorado, *Boyd* v. *Close,* 257 Pac. Rep., 1079, it was said, in direct approval of the view suggested, that "the 'family car' doctrine has, for the past ten years, been the law of this jurisdiction. *Hutchins* v. *Haffner,* 63 Colo., 365, 167 P., 966, L. R. A., 1918A, 1008. Liability under that doctrine, is not confined to owner or driver. It depends upon control and use." To the same effect is *Allen* v. *Bland* (Tex. Ct. of App.), 168 S. W., 35, 8 Neg. & Comp. Cases, 299. In the latter case the minor son purchased the car for his own use, the father paying for its upkeep. The court held the father liable for negligence in giving his permission to the purchase and the operation.

But, however plausible, as above shown, may be the view taken by the trial court and Court of Appeals that the family-purpose doctrine may be applied to the case before us, it must be conceded that some extension of the application of this comparatively new and much criticised doctrine is involved. This we find unnecessary here.

The alleged weakness of the family-purpose doctrine lies in its apparent departure from the *respondeat superior* rule, as it has been generally understood and applied, and looking to the particular facts of the instant case, we find a basis for the liability of the father resting more securely on the doctrine of principal and agent.

Here the son was in performance of a mission which it was the duty of the father to have him perform. If the son was not more than sixteen years of age, the father was required by statute to send him to school. Section 18, chapter 115, Acts of 1925; *Covell* v. *State,* 143 Tenn., 571. But conceding that he had passed sixteen years, the

obligation to educate the minor son is clear. In *Maguinay* v. *Sawdek*, 5 Sneed, 145, Mr. Justice McKINNEY says that one who stands *in loco parentis,* "is responsible for the maintenance and education of the child so long, during its minority, as it lives with him." He cites Kent's Com., 192, and that learned author emphasizes the education of children in a manner suitable to their station and calling as a branch of parental duty of very great importance to the welfare of the State. Now, here the parent quite properly recognized this high obligation and undertook to perform it. So, he sends the son to school, paying for his tuition, books, clothing and other expenses. In order that he may conveniently and promptly attend school he assists him in procuring a conveyance, and then furnishes him weekly with the means to provide the necessary fuel, and its maintenance or upkeep. The father thus clearly furnished the son the instrumentality for his transportation on the mission on which the father was sending him. In going to and from school, under his father's direction, the son was in the prosecution of a matter which was the legal, as well as properly assumed duty or business of the father.

Ownership of the motorcycle was not material. Liability of the master ordinarily accrues when, engaged upon his business, the servant negligently inflicts injuries upon another. It makes no difference to whom an instrumentality, used by the servant and inflicting the injury, belongs. If such instrumentality is used in the business of the master with his knowledge and consent, and negligently used so as to occasion damage, the master is responsible for such misuse although the instrumentality be the property of the servant.

Concurring on the grounds stated with the conclusion reached by the Court of Appeals, the judgment is affirmed.

### DISSENTING OPINION.

MR. JUSTICE COOK dissented.

■ According to my view, neither the family-purpose doctrine nor that of *respondeat superior* applies. Elaboration could serve no purpose. It is sufficient to say that the seventeen-year-old son bought and paid for the motorcycle and it was registered in his name. It was his property. When riding it to school he was using it for his own convenience and not as the representative of his father.

It does not appear that the son was irresponsible and reckless so as to render his use of a motorcycle a menace to others. Hence the father ought not to be penalized upon another theory that might be applied—that of negligent failure to exercise parental restraint.

The father is not liable for the son's tort merely by reason of the relationship. *Broadstreet* v. *Hall,* 10 L. R. A. (N. S.), Note II, p. 933.