MRS. MARY WOODFIN and R. M. ATKINSON, Plaintiffs in Error, v. MRS. AUDRA INSEL, MRS. ADALINE MILLER and MISS JANIECE SIMS, Defendants in Error. (Three cases.)

Middle Section.  July 2, 1931.

Petition for Certiorari denied by Supreme Court.  December 19, 1931.

Brown & Jackson, of Murfreesboro, for defendants in error.

Aust, Cornelius & Wade, of Nashville, and Wiseman & Todd, of Murfreesboro, for R. M. Atkinson.

Hume & Armistead and L. M. Davis, of Nashville, for Mrs. Mary Woodfin.

DeWITT, J. These three actions were instituted against Mrs. Mary Woodfin and R: M. Atkinson for damages for personal injuries sustained by the plaintiffs on February 8, 1930, as the result of a collision between a Hupmobile of R. M. Atkinson and a Ford sedan of Mrs. Mary Woodfin on the highway between Murfreesboro and Shelbyville at a point where a road from said highway leads off eastwardly to the town of Christiana. Mrs. Audra Insel, Mrs. Adaline Miler and Miss Janiece Sims (hereinafter referred to as plaintiffs) were sitting on the rear seat of the Ford sedan, which was being driven sothwardly by Woodfin Miller, a boy fifteen years of age. On the front seat with him was his mother, Mrs. Jim Miller, a daughter of Mrs. Woodfin the owner of the car. Woodfin Miller and his mother were killed by the collision. The plaintiffs suffered personal injuries. The car of R. M. Atkinson was being driven northwardly. When the Ford sedan of Mrs. Woodfin reached a point about opposite the mouth of the Christiana Road the driver undertook to turn his car to the left to go into that road, when it was struck on its right front side and wheel by the Atkinson car. Both cars were turned over and the casualties resulted as aforesaid.

These suits brought by these occupants of the rear seat of the Ford sedan, who were riding therein, were tried together to a jury before the Circuit Judge and resulted in verdicts and judgments for $1500 for each plaintiff against Mrs. Mary Woodfin and R. M. Atkinson jointly. Each of said defendants has appealed in error and assigned numerous errors.

There are five counts in each of the declarations as follows:

"The first count alleges in substance that the plaintiff was riding as a guest in the car of the defendant Mrs. Mary Woodfin, which was at the time of the accident being operated by the defendant's agent and servant, Woodfin Miller, when said automobile had a collision with the car of the defendant R. M. Atkinson. In this count it is alleged that the defendant Mrs. Woodfin, through her said servant, was guilty of negligence in that he recklessly, carelessly, negligently, and without exercising ordinary or reasonable care, steered or turned said automobile to his left, and in front of the car belonging to the defendant R. M. Atkinson, in an attempt to enter upon and turn into and upon the Christiana road whereby the car of the defendant Atkinson, which was being driven by his agent and servant, collided with the car in which the plaintiff was riding. Negligence against the defendant Mrs. Woodfin, only is alleged in this court.

"The second count avers negligence against the defendant R. M. Atkinson and charges that he did unlawfully, recklessly, carelessly and negligently operate his car in that he was running at a fast rate of speed, failed to apply his brakes or stop his car, or drive around the car in which plaintiff was riding, or take the necessary steps or precaution to prevent the accident, and as a result of this negligence collided with the car in which plaintiff was riding, doing the damages complained of.

"The third count also alleges negligence against the defendant R. M. Atkinson, and charges that he was driving his said car carelessly and heedlessly in willful and wanton disregard of the rights or safety of others, and without due caution or circumspection, and at a speed or in a manner so as to endanger or likely to endanger the plaintiff.

"The fourth count charges that the defendant Mrs. Woodfin's agent, unlawfully, negligently, carelessly and recklessly steered or turned his car to the left in front of the defendant Atkinson's car, and that the defendant Atkinson unlawfully, negligently, carelessly, and recklessly operated his car in that he was running at a fast rate of speed, failed to stop or apply his brakes or pass around the car in which the laintiff was riding, thereby resulting in the collision, as a result of the negligence of both defendants.

"The fifth count alleges that the defendant Atkinson was guilty of negligence in that there was plenty of room both on the highway and on the shoulder of the road for him to have driven his car around the plaintiff's car. Also that at the time the plaintiff's car made the turn the defendant Atkinson's car

was some two hundred to three hundred feet south of said intersection and that there was plenty of distance for Atkinson to have stopped or slowed down his car and prevented the accident."

To each of the declarations the defendants pleaded not guilty. In behalf of Mrs. Mary Woodfin and R. M. Atkinson it is insisted that there is no evidence to support the verdict; and that the Circuit Judge erred in overruling their motions for peremptory instructions made at the close of all the evidence.

Mrs. Woodfin, the owner of the Ford car, was an aged lady and could not drive the car. She resided at that time with her daughter, Mrs. Jim Miller and her husband, the parents of Woodfin Miller, but they were not dependent on Mrs. Woodfin nor was she dependent on them. The plaintiff Mrs. Adaline Miller was the wife of a grandson of Mrs. Woodfin. The other two plaintiffs were neighbors and friends. There is evidence that Mrs. Woodfin kept the car for general use, to visit stores, to make visits and to go to church; that Woodfin Miller was the only one who drove the car; that Mrs. Woodfin always permitted the members of the family to use the car, but that they always asked her permission before they used it. There is no evidence of registration of the automobile in the name of Mrs. Woodfin, but it is admitted that she was the owner of it. The five persons who were in this car at the time of the collision had been driven in it to Murfreesboro with the knowledge and consent of Mrs. Woodfin, and they were returning toward their homes near Christiana. There is no evidence that Mrs. Woodfin requested them to go on this trip. There is a hearsay statement by her son, unobjected to, that she asked them to bring back a pair of shoes, but the three plaintiffs testified that she did not request them to bring back anything; and if she had done so it would have been merely incidental to their trip.

The liability of Mrs. Woodfin, if any, depends upon the application of the "family purpose" doctrine. It is insisted that this was merely a loan, or bailment, and that in no view of the facts could Woodfin Miller be regarded as the agent of Mrs. Woodfin in ministering to the pleasure or convenience of the occupants of the car. There is no evidence that Woodfin Miller was hired by Mrs. Woodfin to drive her car.

In the absence of evidence that the automobile was registered in the name of Mrs. Woodfin, the presumption created by chapter 59 of the Acts of 1923, that it was being operated by the owner's servant for the owner's use and benefit and within the course and scope of his employment, does not arise; for it arises only upon proof of registration. The statute, being in derogation of the common law, must be strictly construed. It is limited in its application to cases wherein is proof of registration and no proof of agency. Hodges

v. West, 8 Tenn. App., 307. The rule of the common law as to the absence of any presumption that the operator of an automobile was engaged on the business of the owner was declared in Frank v. Wright, 140 Tenn., 527, 205 S. W., 434, and Davis v. Newsom Auto Tire Co., 141 Tenn., 525, 213 S. W., 914.

The "family purpose" doctrine, under which the owner of the car is held liable for damages resulting from its negligent operation by members of his family whom he permits to use it, was first adopted in Tennessee in King v. Smythe, 140 Tenn., 217, 204 S. W., 296, L. R. A., 1918F, 293, and has been reaffirmed in Schwartz v. Johnson, 152 Tenn., 586, 280 S. W., 32, and Meinhardt v. Vaughn, 159 Tenn., 272, 17 S. W. (2d), 5.

In King v. Smythe, supra, the owner of a car, a physician, was held liable for injuries negligently inflicted by his son while driving the car which was bought and maintained for the professional purposes of the father and for the pleasure of his family. The son was supported by his father and lived in his home. The car was generally at the disposal of the members of the family whenever the father was not using it. At the time of the accident the son was operating the car on his own business. The Court said:

"If an instrumentality of this kind is placed in the hands of his family by a father, for the family's pleasure, comfort, and entertainment, the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can substantial justice be attained. A judgment for damages against an infant daughter or an infant son, or a son without support and without property, who is living as a member of the family, would be an empty form. The father, as owner of the automobile and as head of the family, can prescribe the conditions upon which it may be run upon the reads and streets, or he can forbid its use altogether. He must know the nature of the instrument and the probability that its negligent operation will produce injury and damage to others. We think the practical administration of justice between the parties is more the duty of the court than the preservation of some esoteric theory concerning the law of principal and agent. If owners of automobiles are made to understand that they will be held liable for injury to person and property occasioned by their negligent operation by infants or others who are financially irresponsible, they will doubtless exercise a greater degree of care in selecting those who are permitted to go upon the public streets with such dangerous instrumentalities.

"The ownership of the automobile by defendant Smythe, and the fact that it was being driven by a member of his

family with his permission, coupled with the further fact that the automobile was purchased and maintained for this purpose, among others, made a prima-facie case of liability. Many cases hold that the ownership of the automobile merely makes a prima-facie case that it was then in the possession of the owner, and whoever was driving it was doing so for the owner. Birch v. Abercrombie, supra. But this case is not left to such presumption. It is further proven that the automobile was being driven by defendant's son with defendant's permission, for the son's pleasure, and that defendant bought the automobile partly for such purpose.''

Concerning that opinion, it is said in Meinhardt v. Vaughn, supra:

''It is true that Mr. Justice Lansden refers to the father as 'owner,' and to his 'ownership,' but it is significant that in this connection he stresses 'the fact that it was being driven by a member of his family with his permission, coupled with the further fact that the automobile was purchased and maintained for this purpose,' and he holds that this made a prima-facie case of liability. And looking back to the quotation already given, it will be seen that the learned writer said, 'If an instrumentality of this kind is placed in the hands of his family by a father,'—the placing of it in the hands of these irresponsible members of his family is the point stressed. The furnishing, maintenance and control are apparently the essential predicates of liability of the responsible parent.''

The instant case involves an extension of the rule of agency underlying the ''family purpose'' doctrine to sustain the liability of a grandparent who was not the head of the household; who allowed it to be used by members of her daughter's family when permission was asked; and who was not the employer of the driver of the car. The facts are different from those of any other reported case in Tennessee. The liability of Mrs. Woodfin must depend upon whether her grandson operating her automobile was her servant, or agent, and engaged upon her business at the time the alleged negligence occurred. King v. Smythe, supra. The question is one of the practical administration of justice. An adult son, supported by his father, driving his father's automobile under a general permission to use it for his own pleasure and convenience, is his father's agent in furtherance of this purpose because his father intended it. Could the jury in the instant case reasonably infer that Mrs. Woodfin gave a general permission to her daughter and members of her family to use her car whenever they so desired? The evidence is undisputed that her permission was asked every time the car was used by them. Could an agency in the grandson be inferred from the fact that he generally drove the car? He was her agent

when she rode in the car and he was driving. Could he be regarded as her agent when he, with her special permission, was driving the car for his own purposes or those of his mother or other members of her family? To answer this question affirmatively would be to negative the idea of a loan or bailment rendering the owner non-liable.

It is inferable that Mrs. Woodfin was generous in allowing to them the use of her car, and that her grandson's services in driving the car for her own peculiar purposes made her all the more willing to permit them to use it. But it would strain good reason to say that because of the benefit to her from the boy's services when she used the car, he was her agent when it was otherwise used. She was not the head of the family owing to her children or grandchildren any duty of support or of promotion of pleasure or convenience.

The "family purpose" doctrine is applicable only where the head of the family maintains the vehicle for the general use, pleasure and convenience of the family. The use of the vehicle is then in furtherance of this purpose in providing it. 42 C. J., 1080. The doctrine puts the financial responsibility of the owner behind the automobile while it is being used by a member of his family (who is likely to be financially irresponsible), in furtherance of the business and purpose for which it is maintained. Jones v. Cook, 90 W. Va., 710, 111 S. E., 828.

This might be a case for the application of the doctrine if it appeared that this aged lady, living with her daughter and her family, maintained the automobile with a general permission to them to use it whenever they so desired, without asking her permission for each use. Under such circumstances they might be considered as one family in the sense of one collective body of persons, closely related to each other, residing in the same house. But since Mrs. Woodfin gave special permission each time the car was used, it cannot be said that the car was maintained for general family purposes. She did not retain control of it when she allowed the others to use it. She merely loaned it upon the occasion in question. There is no evidence that she paid for the gasoline, oil, etc., consumed when others used it.

In Euster v. Vogel, 227 Ky., 735, 13 S. W. (2d), 1028, a judgment for the plaintiffs was reversed for error in the following instructions:

"If the jury believe from the evidence that the car in which the defendant, Robert Euster, was riding at the time was owned or claimed by him, or that said car was at that time and place being operated by the members of the family of the defendant, Robert Euster, with his knowledge and consent, and for the purpose for which it was kept, then the law of the case was for the plaintiffs, if the jury further found that the driver of

the Euster car was guilty of any negligence.'' The Court of Appeals of Kentucky said:

"In so far as this instruction undertook to submit to the jury the question of liability on the part of the appellant under the family purpose doctrine, it was erroneous. It did not make the liability turn on whether the appellant owned, maintained or provided the automobile for his family's use or not, but simply on whether that automobile, no matter by who owned, maintained, or furnished for such operation, was used for the purpose intended—no matter by whom intended—if done with appellant's knowledge and consent.

"We are cited to no case sustaining any such principle. On the contrary, one of the indispensable requisites of the family purpose doctrine is that the person, upon whom it is sought to fasten liability under that principle, owns, maintains, or provides an automobile for the general use, pleasure, and convenience of the family. See 42 C. J., 1089. This principle underlies all our cases in which the family purpose doctrine was involved.''

The rule as applied in Tennessee has not transcended these limits. It has only been applied when the automobile was owned, maintained, or provided, for the general use, pleasure and convenience of the family.

It results, therefore, that the defendant Mrs. Mary Woodfin is not liable for the injuries resulting from the collision, if the collision was proximate result of the negligence of her grandson, Woodfin Miller. The judgment will be reversed and the suit dismissed as to her.

There was substantial evidence tending to show that the boy was negligent in turning suddenly across the highway in front of a heavy car coming toward him at a rapid rate of speed. The conclusion that Mrs. Woodfin was not liable therefor would obviate the consideration of other defenses, but it is deemed proper to dispose of the contention that the plaintiffs should have been barred by their contributory negligence in failing to warn the driver of the peril. The law is well settled that the question of the guest's contributory negligence is one for the jury. Although the passenger or guest must exercise reasonable precautions for his own safety, must give warning of danger when he sees, or ought by due diligence to see, that the driver is not taking proper precautions, nevertheless such person may rely upon the assumption that the driver of the automobile will exercise proper care and caution unless the danger is obvious or is known to the passenger or guest. Dedman v. Dedman, 155 Tenn., 241, 291 S. W., 449; Knoxville Ry. & Light Co. v. Van Gilder, 132 Tenn., 487, 178 S. W., 1117; Tenn. Central R.

R. Co. v. Van Hoy, 143 Tenn., 312, 226 S. W., 225; N. C. & St. L. Ry. v. White, 158 Tenn., 407, 15 S. W. (2d), 1.

The plaintiffs testified that the Ford car was driven on the right hand side of the highway until while moving slowly it was turned to go across into the Christiana Road. Mrs. Miller saw the Atkinson car when it was opposite a garage 250 to 300 feet away. Miss Sims saw it when it was somewhat nearer. Mrs. Insel saw it when she thought they had plenty of time to get across. Miss Sims gave to it only a passing glance. She was paying no attention to the driving of the car in which she was riding. She also thought that there was ample time to get across. These ladies all testified that they did not realize that they were in danger. They were evidently relying upon the precaution of the driver of their car. From this evidence the jury could reasonably have inferred that these plaintiffs were not guilty of negligence in failing to warn the driver in order to avoid the peril; the peril was so suddenly brought upon them that it could reasonably be concluded that they were not guilty of lack of vigilance under the circumstances. It results that the assignments that they should be barred by their own negligence are overruled.

In support of the charge of negligence of the defendant R. M. Atkinson and the driver of his car, his friend Mr. Fly, there is material evidence that the car was being driven at an unreasonable and dangerous rate of speed under the circumstances. It is true that Mr. Atkinson testified that near the filling station he warned Mr. Fly to look out, that there was a car standing in the mouth of the Christiana lane which might come out in front of his car; that Mr. Fly told him that he saw it; that thereupon he slowed down to a speed of about twenty-five miles an hour from a speed of from forty to forty-three miles an hour; that he applied his brakes and sounded his horn; and that although they saw the Woodfin car coming toward them on the opposite side of the road, no signal was given of any intention to turn and they had no reason to think that such a turn would be attempted. But the witness J. T. Oden testified that the Atkinson car was running something around sixty miles an hour and did not slow down. Other witnesses testified that the Atkinson car was running facts.

The testimony of Mr. Atkinson and Mr. Fly was substantially corroborated by that of their wives, who were in the car with them. It is not for the appellate court to pass upon the credibility of this testimony. This was a question for the jury and it has resolved the conflicts in the evidence. We must merely take the strongest view of any testimony tending to support the verdicts and determine whether or not the jury could reasonably have based verdicts upon it in favor of the plaintiffs. The driver of the car was aware more

than 250 feet away of the mouth of the Christiana Road and of the presence of an automobile standing in it as if to go into the highway. At that place was a sign, "side road." There was also a possibility that the Woodfin car might turn to go into the Christiana Road. To drive a car toward that place at the rate of sixty miles per hour without slowing up and taking all due precautions to avoid a collision would be sufficient to warrant the jury in finding that negligence on the part of the driver of the Atkinson car was a proximate cause of the collision and the injuries. The rule is that as passing is well known to be the ordinary exigency of travel it is the duty of all travelers to anticipate and keep a lookout for those who might be thus authorized temporarily to obstruct their passage, and to have their means of locomotion under such control as to enable the observance of the law of the road, as well as to anticipate that it will be observed. Talley v. Dalton, 10 Tenn. App., 597.

The Circuit Judge instructed the jury that Chapter 87 of the Public Acts of 1929 had operated to remove the speed limit of thirty miles per hour for operation of automobiles on public highways. In Godsey v. State, 162 Tenn., 568, 39 S. W. (2d), 286, this Act of 1929 was declared unconstitutional and invalid because its caption was insufficient to cover the provisions of the Act. The result is that Chapter 132 of the Acts of 1925, amending Chapter 173 of the Public Acts of 1905 was still the public law of the State. In a case styled Haney v. Thomason, Administrator, Davidson Law we this day hold that the said Act of 1929, if valid, would have operated to remove the arbitrary speed limit of thirty miles per hour imposed by said Act of 1925; and nevertheless that as it was the duty of every citizen to presume that an act of the legislature is valid until it is declared otherwise by judicial declaration, a person operating his automobile in excess of thirty miles an hour but not otherwise negligent, should not be penalized with the consequences of the rule of negligence per se in violating the statute. In view of this conclusion we do not rest the liability of the defendant R. M. Atkinson upon the ground that he or the driver of his car was guilty of negligence per se, but upon the finding that there is material evidence to support the verdict of the jury that his car was being operated negligently and at a dangerous rate of speed, and this was a proximate cause of the accident and injuries.

The Circuit Judge set forth to the jury the respective contentions made by the plaintiffs and the defendants, closing each of such statements with a further statement, in varied language, but embodying a rule which is challenged in a number of assignments of error. A sample of these statements is as follows:

"Now what is the truth as between these two conflicting contentions, you, the jury, must determine under the law as given

you by the court—you taking the law as the court gives it to you."

We do not interpret this statement as affecting the burden of proof. The jury were carefully and fully instructed that each plaintiff was required to make out her case by the preponderance, or weight, of the evidence, before she might recover. If there was any error in this statement, it was in conveying the idea that either contention must be found to be absolutely true. The question of error affects only the defendant, for the verdicts show that the plaintiffs suffered no prejudice. The Trial Judge, in making these statements, was merely telling the jury that it was their province to determine as between the conflicting contentions, and to determine according to the law as propounded by the Court. This included the rules as to the quantum of evidence required to sustain the burden of proof. In Railway & Light Co. v. Dungey, 128 Tenn., 587, 163 S. W., 802, it was held to be reversible error to instruct the jury that if they should find defendant's version how the accident occurred, to be true, the verdict should be for it—because it placed on defendant the burden of proving the truth of its theory. That case is not apposite here, because the statement here challenged did not relate to the burden of proof.

Looking at these contentions, the truth of which was so stated as for the jury to determine, we must realize that in each series one or the other contention must be true. Either the acts of omissions occurred or they did not occur. The jury found that they did occur as negligent acts or omissions and there is evidence to sustain it. Either Mrs. Woodfin furnished and maintained her car for the general purposes of the family with whom she lived, or she did not. This issue was sharply drawn and the rules applicable to it were fully discussed by the Trial Judge. We hold these statements by the Trial Judge did not constitute reversible error.

In behalf of both defendants it is insisted that the Court erred in charging the jury as follows:

"A contention is made on the part of each defendant—each defendant makes the contention that there should be no recovery in the case, whether the defendant was guilty of negligence or not, because of contributory negligence on the part of Woodfin Miller, or rather not contributory negligence on the part of Woodfin Miller but negligence on the part of Woodfin Miller as constituting the sole proximate cause of the injury; if you find that there was negligence on the part of Woodfin Miller, and that was the sole proximate cause of the injury, and that the defendants' acts were not the proximate cause, of course there could be no recovery against the defendants."

This was a part of the statement of the attorneys made in behalf of each of the defendants. It concluded with the instruction as

to non-liability of either defendant who should be found not to have been guilty of negligence as the proximate cause.

In behalf of Mrs. Woodfin it is insisted that this statement was that her contention was that Woodfin Miller was guilty of negligence as the sole proximate cause of the injury. It is true that this statement was erroneous for it was contended in behalf of Mrs. Woodfin that Woodfin Miller was not guilty of such negligence. Counsel for Mrs. Woodfin took advantage of every opportunity to bring before the court and jury the idea that the plaintiffs themselves even were not blaming Woodfin Miller for this accident, that they all thought that at the time their car turned across the highway the Atkinson car was so far up the pike that there was absolutely no danger to be incurred as the result of making this turn. An effort was even offered to show by the evidence that the Atkinson car had ample room to pass around the rear end of the Woodfin car. The question however is whether or not this error did work to the prejudice of either defendant. The instruction complained of was followed with a statement that it was the contention of each defendant that there should be no recovery against either of them because each of the plaintiffs was guilty of contributory negligence in that she saw the situation, the rapid approach of the Atkinson car, realized the danger, and yet did nothing to warn Woodfin Miller as to the danger. The Court then told the jury that the negligence of Woodfin Miller could not be imputed to any of the plaintiffs unless she saw the danger and had time to give warning and did give warning or something to prevent the collision; that she had a right generally to suppose that Woodfin Miller would manage the car properly and with reference to any danger.

There was testimony on the part of these plaintiffs tending to exculpate Woodfin Miller. It was charged in the declaration that Woodfin Miller recklessly, carelessly and negligently and without exercising ordinary or reasonable care, steered or turned his automobile to his left and in front of the Atkinson car in an attempt to enter into and turn into or upon the Christiana Road.

These plaintiffs testified that they thought that their car had time to pass across the highway and into the road but they were mistaken. Aside from this testimony, which tended to relieve them of the charge of contributory negligence, there was evidence from which the jury could reasonably infer that Woodfin Miller was negligent. This evidence is other than that adduced by the defendant Atkinson.

It will be remembered that Mrs. Woodfin took the position that Woodfin Miller was not her agent or servant, and this contention is insisted upon in her behalf upon this appeal. There is therefore no real conflict between the proposition that Woodfin Miller was

guilty of negligence as the sole proximate cause, and any position taken by Mrs. Woodfin or in her behalf that he was guilty of such. In other words, taking the two propositions together we do not see how Mrs. Woodfin was prejudiced by the statement attributed to her in the charge of the Circuit Judge. We are unable to sustain the insistence that the instructions complained of operated to the prejudice of the defendants.

Finally, it is insisted that the amounts of the respective verdicts are so excessive as to indicate passion, prejudice or caprice on the part of the jury. The amount awarded to each of these plaintiffs is $1500. They are all young women. Mrs. Insel sustained a cut on her head requiring twenty-five stitches to sew it up. It was five weeks before it was well. There was also three small cuts on her left leg, she suffered an injury to her teeth, three of which were broken off. She suffered much pain in her right eye, and this continued up to the time of the trial—several months after the accident. She testified that she could not see as well as before. She was disabled to perform her duties as housekeeper for six weeks. She suffer much from shock and nervousness.

Miss Sims, was injured in her back and kidneys. She was in the hospital five or six days. She had many bruises, the principal one being over the right kidney. She developed traumatic pneumonia due to the bruises. She suffered continually from nervousness and lost weight, became toxic. Doctor Allen, her physician, testified that he could not say whether or not she would fully recover from the injury to her right kidney. Miss Sims suffered much from shock and nervousness and loss of sleep.

The plaintiff, Mrs. Miller, was bruised around her eye and in her back. She suffered a wrench of the back. She suffered severe pains in her back and had a soreness there for a long time and her nerves were shattered. The injury to one of her eyes had continued up to the time of the trial. As to this eye she was asked and answered as follows:

"Q. Now that eye that you spoke of hurts you, just how does it hurt you, that is what I am about with reference to time, continually, once in a while, or how? A. Well, of course for a while it was sore but now when I read it seems like it blurs and jumps and waters. I cannot sew much and I can look out of one eye, I can see out of my left eye better than I can out of my right one."

She testified that her back hurt her all the time, was not a bit better; that she was not able to perform her household duties as she formerly did. She was asked about rest or sleep. She said:

"Sometimes when I take some medicine, sometimes I can't, I just feel like I am pulling back and forwards when I lay down."

The evidence is that all of these ladies were sound in body and health prior to the accident and that they not only suffered bruises as aforesaid but suffered continually from nervousness, loss of sleep, etc.

These assignments in behalf of defendants to the effect that the verdicts were so excessive as to show passion, prejudice and caprice are not elaborately pressed in the briefs and arguments of counsel. However we have stated the evidence as to the injuries because it is proper to set forth the basis for the amounts awarded. This Court should not attempt to substitute its judgment for that of the jury as approved by the Trial Judge. The amounts awarded do not ppear to be excessive. It could easily be inferred that these plain-iffs have suffered greatly and continually from these injuries. It may be that some of these injuries are permanent. The law prescribes no exact standard by which the compensation to be awarded in such case shall be measured. Full compensation is impossible in the abstract and different individuals will vary in their estimate of the sum which will be a just pecuniary compensation. 8 R. C. L., 673; Saucier v. Roberts, 2 Tenn. App., 211.

It results that the judgments against Mrs. Mary Woodfin are reversed and the cases are dismissed as to her; but that the judgments are affirmed as against R. M. Atkinson. A judgment will be entered in each of these cases against him in favor of the plaintiff for the sum of $1500, with interest from the date of the judgment in the Circuit Court, and all costs of this cause, including the costs of the appeal, excepting that in each case the costs accruing from making Mrs. Mary Woodfin a party will be adjudged against the plaintiff. The costs of the appeal will also be adjudged against the surety on the appeal bond of R. M. Atkinson.

Faw, P. J., and Crownover, J., concur.