JETTON v. POLK et al.—68 S. W. (2d) 127.

Middle Section. May 27, 1933.

Petition for Certiorari denied by Supreme Court, February 24, 1934.

J. H. Cummings, of Woodbury, and C. C. Jackson, of Murfreesboro, and Seth M. Walker, of Nashville, for plaintiff in error Jetton, administrator.

Trabue, Hume & Armistead, of Nashville, for defendants in error Polk and Hardcastle.

CROWNOVER, J. This was an action by the administrator against Polk and Hardcastle for damages for the death of James R. Jetton, Jr., caused by an automobile collision. The recovery, if any, should go to the father, James R. Jetton, Sr., as surviving parent.

Defendants pleaded the general issue of not guilty and also filed a special plea, as follows:

"Permission of the court having heretofore been obtained to file this amended plea, the defendants, for further plea, say that they made claim against James R. Jetton, Sr., and/or the estate of James R. Jetton, Jr., deceased, for the damage done to their car involved in this accident, and the personal injuries received by the driver of same, the defendant B. L. Polk, and that there was paid to them $840.00 for and on behalf of the said James R. Jetton, Sr., and/or the estate of James R. Jetton, Jr., deceased, in settlement of said claim, and defendants therefore plead said settlement in bar of this suit."

The plaintiff joined issue on said plea, and for further replication to said plea "averred that if any sum of money was paid the defendants for or on behalf of James R. Jetton, Sr., and/or the estate of James R. Jetton, Jr., deceased, as averred in said plea, plaintiff averred that the same was paid by an insurance company carrying a liability insurance policy on the automobile which James R. Jetton, Jr., was driving when killed, and that such payment, if any, was made without plaintiff's knowledge or consent and before he qualified as administrator of said estate, and without the consent of James R. Jetton, Sr., but over his vigorous protest against so doing.

"For further replication plaintiff averred that if any money was paid to defendants as alleged in said plea, that it was paid by said insurance company without the knowledge or consent of plaintiff, before he qualified as administrator of his intestate, and without the consent of James R. Jetton, Sr., and was a fraud upon the rights of plaintiff, both in law and in fact, because said insurance company knew that in no event could any lawful claim be made against the estate of James R. Jetton, Jr., for any alleged wrongful act upon his part, in that any right of action defendants had against said James R. Jetton, Jr., abated upon his death which occurred in five minutes next following the accident and before defendants brought any suit against him, and because defendants had no cause of action against James R. Jetton, Sr., if for no other reason because James R. Jetton, Jr., was not on the business of said James R. Jetton, Sr., at the time of the accident, and which facts said insurance company well knew before it paid defendants any sum of money, and that if any such sum was paid defendants as alleged in said plea it was paid by said insurance company carrying said liability insurance policy on the auto-

mobile operated by James R. Jetton, Jr., at the time of his death for the purpose, among other things, of permitting defendants to set up the matters incorporated in said plea in bar of the plaintiff's present suit.''

The case was tried by the judge and a jury. At the close of plaintiff's evidence defendants moved the court for peremptory instructions on the ground that there was no evidence to support a verdict against them, which motion was overruled.

At the close of all the evidence plaintiff moved the court to strike defendants' amended plea filed October 18, 1932, on the same grounds as heretofore made, and the defendants renewed their motion for peremptory instructions and moved the court to sustain their amended plea on the grounds heretofore made. The court thereupon overruled the motion of plaintiff to strike said amended plea, to which action of the court plaintiff excepted.

Thereupon plaintiff moved the court to admit for the consideration of the jury all the evidence heard by the court in the absence of the jury, in support of and against said amended plea, and plaintiff's replication thereto, and the issue joined by defendants, and to submit to the consideration of the jury, with proper instructions, the question whether or not the release described in said amended plea was obtained in good faith or for the purpose of permitting defendants to set up the matters incorporated in said plea in bar of plaintiff's suit. The court overruled said motion, to which action of the court plaintiff excepted.

The court thereupon sustained defendants' said amended plea, and upon that ground sustained defendants' motion for peremptory instructions and instructed the jury to return a verdict in favor of the defendants on account of said special plea, which was done, and judgment was entered for defendants, to which plaintiff excepted.

The defendants also moved the court to reconsider his former action in refusing to grant their motion for peremptory instructions and to enter a verdict in their behalf on the ground there was no actionable negligence proven, but this motion was overruled, to which defendants excepted.

The motions of both plaintiff and defendants for a new trial were overruled and they have appealed in error to this court and have perfected their appeals in error and have assigned errors.

The assignments of errors of the defendants raise only one proposition:

That there was no evidence upon which a verdict against defendants could be based and the court erred in not sustaining their motions for peremptory instructions on this ground.

The plaintiff's assignments of errors are, in substance, as follows:

(1) The court erred in directing the jury to return a verdict for the defendants on the ground that the releases executed by defendants to the insurance company, over the protest of James R. Jetton, Sr., estopped the plaintiff from suing for damages arising out of the accident against said defendants, who were the actual wrongdoers.

(2) The court erred in refusing to submit to the jury the question whether the said releases were obtained by said insurance company and executed by the defendants in good faith.

James R. Jetton, Jr., of Murfreesboro, Tennessee, was a young man of 29 years of age. He was unmarried and lived with his father, James R. Jetton, Sr., at his home in Murfreesboro. He was employed as assistant cashier of the Commerce-Union Bank.

For several days next preceding March 12, 1931, the manager of a branch bank of the Commerce-Union Bank at Woodbury had been sick following an operation for appendicitis, and young Jetton had gone every morning from Murfreesboro to Woodbury to superintend the bank there.

At about 9 o'clock on the morning of March 13, 1931, James R. Jetton, Jr., was on his way from Murfreesboro to Woodbury to attend to his duties at that bank, when, at a point about three and one-half miles west of Woodbury, he was killed in a collision between the Ford coach automobile which he was driving and a Chevrolet automobile traveling in the opposite direction, owned by Hardcastle and Polk, of Goodlettsville, and driven by Polk.

The Ford coach automobile belonged to James R. Jetton, Sr., the father of the deceased. He carried a liability insurance policy on the automobile in the Hartford Accident & Indemnity Insurance Company.

The policy contained two provisions material to his controversy, as follows:

"Notice and Settlement.

"E. In the event of accident, immediate written notice hereof shall be given to the company at its Home Office in Hartford, Connecticut, or to one of its duly authorized agents, with particulars sufficient to identify the assured, and like notice of any claim or suit arising or resulting therefrom, with every summons or other process served therein; provided, however, that failure to give such immediate notice shall not invalidate any claim made by the assured if it shall be shown not to have been reasonably possible to give such notice immediately and that notice was given as soon as was reasonably possible, by or on behalf of the assured. The assured must cooperate full with the company in disclosing all the facts known to him about the happening of every accident, the making of every claim and the filing of every suit, and also shall render his aid in the securing

of evidence, the attendance of witnesses at a trial or hearing and in the prosecution of an appeal in the event one is taken. The assured shall not in any way acknowledge or admit any liability on account of any accident nor settle any claim or suit resulting therefrom, nor, without the consent of the company, incur any expense other than for such immediate medical or surgical aid as was imperative at the time of the accident. The company shall have the exclusive right to settle any claim or suit at its own cost at any time.

"Subrogation.

"I. The company shall be subrogated in the case of any payment under this policy, to all rights of the assured to recover from others the amount of such payment, and the assured shall execute all papers required and shall cooperate with the company to secure to it such rights."

Within two or three days after the death of James R. Jetton, Jr., his father, James R. Jetton, Sr., received information that the Hartford Accident & Indemnity Company was negotiating a settlement with Polk and Hardcastle. He went to see Mr. Groomes, the agent of said company, from whom he had purchased the policy, and protested against the proposed settlement.

No notice had yet been given the company, of the accident, by Jetton, Sr., and no administrator had been appointed for the estate of Jetton, Jr.

But the agent of the insurance company, on March 18, 1931, made settlement with Polk and Hardcastle and took written releases. Each release was for $400; one was signed by Hardcastle & Polk and the other by B. L. Polk. The releases were the same, one of which is as follows:

"Release and Settlement of Claim.

"For the sole consideration of Four Hundred and no/100 Dollars ($400.00), lawful money of the United States, to me/us in hand paid by James R. Jetton, and the heirs at law, representatives, executors, and/or administrators of the estate of James R. Jetton, Jr., now deceased, the receipt of which is hereby acknowledged, I/we, Hardcastle and Polk, residing at Goodlettsville, Tennessee, being of lawful age, do hereby release, acquit, and forever discharge the said James R. Jetton, and the heirs at law, representatives, executors, and/or administrators of the estate of James R. Jetton, Jr., now deceased, from any and all actions, causes of action, claims and demands, damages, costs, loss of services, expenses, and compensation on account of or in any way growing out of any and all known and unknown personal injuries and property damage resulting or to result from accident that occurred on or about the 12th day of March, 1931, by reason of automobile accident, and do hereby for ourselves, our heirs, executors and

administrators, successors and assigns, covenant with the said James R. Jetton, and the heirs at law, representatives, executors, and/or administrators of the estate of James R. Jetton, Jr., now deceased, to indemnify and save harmless from all claims and demands, costs, loss of services, expenses, and compensation on account of or in any way growing out of said accident or its result both to person and property.

"It is expressly understood and agreed that the acceptance of the said amount of Four Hundred and no/100 Dollars ($400.00) is in full accord and satisfaction of a disputed claim, and that the payment of the said sum of Four Hundred and no/100 ($400.00) Dollars is not an admission of liability.

"In witness whereof, I/we have set my/our hand and seal this 18th day of March, 1931.

"Hardcastle & Polk,
"By B. L. Polk, Part.

"Witness:

"J. E. Polk, Goodlettsville, Tenn.

"J. T. Johnson, Nashville, Tenn."

The scene of the accident was a point on the Memphis-to-Bristol highway, between Murfreesboro and Woodbury, about three and one-half miles west of Woodbury. The highway extends generally east and west. Woodbury is east of the point of the accident and Murfreesboro is west. The highway is sixteen feet wide, is paved with asphalt, and has a wide center line, and is flat. The accident happened thirty-five feet west of a sharp curve. The curve turned sharply to the north and was down grade to the place of the accident. The defendants' automobile was being driven towards Murfreesboro and had gone about thirty-five feet from the curve when the accident occurred.

There are two accounts of the accident, that of the plaintiff and that of the defendants, and there is a sharp conflict in the evidence. The plaintiff's evidence is that defendants' automobile was being driven at a rapid rate of speed, traveling somewhat left of the center line of the highway, and crashed into the side of Jetton's car before it could be righted after rounding the curve, and there were skid marks showing the defendants' automobile was over on its left side of the road when the accident happened. The defendants' evidence is that young Jetton's car was being driven at a very rapid rate somewhat left of the center of the highway, and that defendants' car had slowed down to a speed of four or five miles an hour, with one wheel on the shoulder of the road, when it was struck by the Jetton car.

There being conflicts in the evidence as to which car struck the other, the question was for the jury, and the court correctly overruled

the defendants' motions for peremptory instructions on the propositions that there was no evidence to sustain a verdict for the plaintiff, and on contributory negligence of Jetton, Jr.; therefore the defendants' assignments of errors must be overruled.

Plaintiff's first assignment of error, that the court erred in directing a verdict for the defendants on the ground that the releases to the insurance company estopped the plaintiff from suing for damages, is well made and must be sustained.

 Even if the use of the automobile by Jetton, Jr., had been covered by the policy of insurance in the Hartford Accident & Indemnity Company, the plaintiff was not bound by these releases. The clause prohibiting settlement by insured without the insurer's consent applies only to actions brought against the insured, and does not preclude settlement by him of an action which he has brought against another to recover for an injury sustained when their automobiles collided. 5 Couch's Cyc. of Insurance Law, 4194, section 1175f; Utterback-Gleason Co. v. Standard Accident Insurance Co. (Sup.), 179 N. Y. S., 836, 840. An unwarranted settlement by the insurer's adjuster of the claim of a third person, after denial of liability by the insured, and without his knowledge or consent, does not estop him from asserting a claim for damages arising out of the accident against such third person, who was the actual wrongdoer. 5 Couch's Cyc. of Insurance Law, 4194, section 1175f.

In the case of Burnham v. Williams, 198 Mo. App., 18, 194 S. W., 751, 753, the same insurance company, the Hartford Accident & Indemnity Company, in an automobile collision case, settled with one of the defendants, over the protest of Burnham, and took a written release worded almost identically like the release in this case. Burnham brought suit against Williams, and the defense set up was that Burnham was barred from suing defendants because of the settlement by the insurance company's adjuster. The Court of Appeals of Missouri held that the insurance contract is to handle only such business as is brought against the assured and that none of the provisions of the policy could be construed as giving the insurance company power to settle any claims which the assured might have against some third party. The court held:

"Appellants contend that by the mere fact of the insurance company settling with Quinn in order to avoid a lawsuit would be determined whose negligence was the proximate cause of the damage; that the mere fact of settlement, although the assured had no hand in it, would be res judicata of that question, or rather would determine the liability so far as the assured is concerned. To this contention we cannot lend our assent. It is a well-known principle of the law of agency that for the principal to be bound by the act of an agent the agent must have acted with either the express or implied authority

of his principal, and that, if the agent was acting entirely outside his principal's business and for some purpose of his own, it is not the act of the principal unless he adopts it. 2 Mechem on Agency (2 Ed.), sections 1719, 1720. Therefore in this case, if it be conceded that the insurance company was acting as an agent for the plaintiff, it only had authority to act for plaintiff in settling claims brought against him, and there is no express or implied authority under its contract authorizing it to settle actions sounding in tort for which the assured claimed damages against third parties. Under the evidence, the trial court was thoroughly justified in finding that Burnham was telling the insurance company that covered any liability so far as he was concerned that he had not been negligent and that Quinn's negligence was the cause of the accident, and further finding that the settlement was made by the company's adjuster to relieve the company of the possibility of paying a judgment which Quinn might secure against Burnham for which it would be liable. Its contract provided that it would take care of claims whether meritorious or fictitous, and it claimed to have the right, and exercised it, of paying Quinn $200, although the receipt or release expressly provided that the payment of the money was not an admission of liability. We therefore hold that the settlement made between Quinn and the insurance company— which under the evidence Burnham had no hand in, being in fact forbidden by his contract to interfere with negotiation for settlement of claims—cannot bind him and estop him from asserting a claim for damages to his property, where the collision, as shown by the record before us, was clearly caused by Quinn's negligent act to which the plaintiff's act in no way contributed.''

Defendants rely on the case of Long v. Union Indemnity Company, 277 Mass., 428, 178 N. E., 737, 79 A. L. R., 1116. That case presents an entirely different situation. In that case Long had a policy of liability insurance in the Union Indemnity Company. His car had a collision with the car of McDougall. McDougall sued Long, who turned the matter over to the insurance company. The insurance company's lawyers settled the case, and a consent judgment was entered in favor of McDougall against Long. Long then brought suit in another county against McDougall. McDougall set up as defenses the judgment against Long and the settlement. The court held that the judgment in the case of McDougall v. Long was conclusive of Long's negligence and dismissed Long's suit. Long then instituted suit against the Union Indemnity Company, but a demurrer to his declaration was sustained and his suit dismissed; hence we think this decision is not in point.

In this case it does not appear from the proof that Jetton, Sr., had purchased or permitted his family to use the automobile for its pleasure and entertainment, and that Jetton, Jr., was permitted

to use the car at his pleasure. It is shown in the evidence that he was on the business of the bank. It appears that the family purpose doctrine did not apply, and this accident was not covered by this policy. Scates v. Sandefer, 163 Tenn., 558, 44 S. W. (2d), 310. There was evidence heard by the court that the automobile was registered in the name of James R. Jetton, Sr., but this evidence was not admitted to the jury. It was adduced while the jury was out of the courtroom; hence there is no presumption that the car was on the business of the father as provided by Code, section 2702. Woodfin v. Insel, 13 Tenn. App., 493. However, this proposition is immaterial, as the plaintiff is not estopped by the settlement made by the insurance company had the family purpose doctrine applied.

And whether the releases were made in good faith becomes immaterial, as we hold that the principles set out in the case of Burnham v. Williams, supra, and other authorities cited, control.

It results that the trial court erred in sustaining said plea and directing a verdict for the defendants. The judgment is reversed, and the cause is remanded to the circuit court of Davidson county for a new trial. The cost of the cause including the cost of the appeal is adjudged against the defendants.

Faw, P. J., and DeWitt, J., concur.