GLADYS M. THOMSON v. HARRY DOYLE THOMAS, SR., AND HARRY DOYLE THOMAS, JR., A MINOR, BY HIS GUARDIAN AD LITEM HARRY DOYLE THOMAS, SR., AND MRS. HARRY DOYLE THOMAS, SR.

(Filed 27 September, 1967.)

**1. Automobiles § 54—**

Evidence tending to show that defendant, driving in a heavy rain, maintained a speed of some 55 miles per hour to within five or six car lengths of an automobile standing on the highway immediately behind a stopped school bus, the brake lights of the car being on and the school bus lights flashing, with another vehicle approaching from the opposite direction, so that defendant crashed into the rear of the stationary car, *held* sufficient to be submitted to the jury on the issue of negligence.

**2. Automobiles § 108—**

Admission in the answer that the additional defendants were persons in whose names the vehicle in question was registered and that it was being operated at the time in question by their son, living in the household, with the consent, permission and knowledge of the additional defendants, is sufficient to be submitted to the jury on the question of the additional defendants' liability under the family purpose doctrine.

**3. Trial § 21—**

Discrepancies and contradictions in plaintiff's evidence are for the jury to resolve and do not justify nonsuit.

APPEAL by defendants from *Parker, J.,* January 1967 Session of NEW HANOVER.

Action *ex delicto.*

Plaintiff offered evidence; defendant offered none. The following issues were submitted to the jury and answered as follows:

"1. Was the plaintiff injured by the negligence of Harry Doyle Thomas, Jr., as alleged in the Complaint?

"ANSWER: Yes.

"2. Was the automobile involved in the collision, subject of this action, provided, maintained and kept for the use and benefit of all members of said family, including the defendant Harry Doyle Thomas, Jr.?

"ANSWER: Yes.

"3. What amount, if any, is plaintiff entitled to recover?

."ANSWER: $17,000.00."

From a judgment entered in accordance with the verdict, defendants appeal.

*W. G. Smith for defendant appellants.*

*Stevens, Burgwin, McGhee & Ryals by Karl W. McGhee and Ellis L. Aycock for plaintiff appellee.*

PER CURIAM. Defendants Harry Doyle Thomas, Sr., and Mrs. Harry Doyle Thomas, Sr., assign as error the denial of their motion for judgment of compulsory nonsuit at the close of plaintiff's evidence, on the ground, *inter alia*, that "there was not sufficient evidence of the agency of Thomas, Jr., under the family purpose doctrine as applied in North Carolina upon which the jury could have found that the car involved in this accident was a 'family purpose' vehicle."

A brief summary of the evidence favorable to plaintiff tends to show the following facts: About 8 a.m. on 7 October 1965, the day of the accident, plaintiff was riding as a guest passenger in a 1961 Ford automobile being driven by defendant Harry Doyle Thomas, Jr., at a point some two or three miles south of the town of Burgaw, traveling in the direction of Wilmington, North Carolina, on U. S. Highway #117. It was raining quite hard, and the highway was very wet. The highway was straight between half a mile and a quarter of a mile in the direction of Wilmington. The highway was paved, with two lanes. There was a car and a school bus in front of them, and there was a school bus meeting them on the other side of the road. The car and school bus in front of them were stopped. The car in front of them had its lights on, and the school bus had its flashing lights on. Plaintiff was looking out of the window at the fields and thinking about how much rain they had been having. It was really raining quite hard, and she did not look at the traffic ahead until Harry put on the brakes quite quickly. When she first looked up and saw these vehicles, the car she was riding in was several car lengths from them, five or six car lengths. Thomas, Jr., was driving between 50 and 60 miles per hour, 55 probably. Plaintiff

testified as follows: "As soon as I saw the cars ahead of us, Harry had applied the brakes and he swerved off the road to avoid hitting the car in front of us and immediately the car went into a skid and finally hit the ditch. It threw me up very hard and I knew that my back was broken. I hit the seat and finally the car hit the ditch and the impact threw me down into the front of the car, half down in the car and half in the seat, and of course I was in just terrible pain and I immediately said to Harry, 'My back is broken,' . . ."

At the time of the collision plaintiff was a 50-year-old woman who was working in Belk's in Wilmington at a salary and bonus of about $300 a month. In the accident plaintiff's injury was a compression fracture of the 12th dorsal vertebra, which reduced said vertebra to one-fourth of its former size, resulting in permanent disability and extreme pain and suffering. It was stipulated by counsel that as a result of the accident plaintiff sustained medical, hospital, and doctors' bills in the total sum of $921.50.

Paragraph three of the amended complaint reads as follows:

> "That on or about the 7th day of October, 1965, the defendants Mr. and Mrs. Harry Doyle Thomas, Sr. were the owners of a 1961 Ford automobile, at which times hereinafter stated, was being driven by their son Harry Doyle Thomas, Jr., and with the consent, permission and knowledge of the said owners and for one of the purposes for which the automobile was owned, maintained and intended; that the son, Harry Doyle Thomas, Jr., was a member of the family and household of the owners, and was then living at home with his mother and father, co-defendants; that the automobile aforesaid was a family car and was owned, provided and maintained for the general use, pleasure and convenience of the family, and was at all times mentioned in this complaint being so used."

Plaintiff introduced in evidence paragraph three of the answer to the amended complaint filed by all three defendants, which reads as follows:

> "Answering paragraph Three of the Amended Complaint, it is admitted that on October 7, 1965, the defendants Mr. and Mrs. Harry Doyle Thomas, Sr. were the persons in whose name the 1961 Ford automobile was registered, which automobile was at the times and places mentioned in the Amended Complaint being driven by the defendant Harry Doyle Thomas, Jr., the son of Mr. and Mrs. Harry Doyle Thomas, Sr., with the consent, permission and knowledge of Mr. and Mrs. Harry Doyle Thomas, Sr.; that the said Harry Doyle Thomas, Jr. was a

THOMSON v. THOMAS.

member of the family and household of Mr. and Mrs. Harry Doyle Thomas, Sr. and was living at home with his mother and father at that time, but all other allegations of said paragraph are denied."

Plaintiff testified as follows:

"Back before the accident occurred, I had been riding with Mr. Thomas approximately three weeks, something like that. I went to New York one week in between, so I think about three weeks really riding, sharing rides. He would drive one day and I would drive the other. On the day of the accident, I had been in his car not many minutes. . . . His mother and father owned that automobile. . . ."

In response to a question as to whether plaintiff knew where the gasoline that went into that automobile came from, she testified as follows:

"Mrs. Thomas had told me that when she—when she was riding with me, they used farm gas. They have a pump at their farm of their gasoline. I swap rides about every other day. Harry Thomas, Jr., at this time, did not have an occupation; he was coming to the Technical School here in Wilmington . . . I had seen Mr. Thomas, Sr., drive the car that was in the accident prior to the accident. I think I had seen Mrs. Thomas driving that car prior to the accident. I have at times seen Harry Thomas, Jr., drive it. I have seen each of those three members of the family use it."

Plaintiff testified on cross-examination:

"With reference to the automobile I was riding in when this accident occurred in October, 1965, and whether to my knowledge Harry had been driving that car back and forth to Wilmington to the Cape Fear Technical Institute for about three weeks, I say he had driven another car. There was more than one car involved. That particular car was the only one involved in this accident, but I mean he had driven more than just this one car. I cannot recall about how long he had been driving that car. He had been driving two or three weeks. But I can't say that particular car because I believe I told you that he was driving, they had another car they drove part of the time too. We live about six miles from the Thomases.

"Before this accident occurred and before I started riding back and forth with young Harry Thomas I had ridden back

and forth with Mrs. Harry Thomas, who also worked at Belk's. She and I swapped rides. As to whether I did know, and do now know that they had just recently acquired this particular car for Harry's purpose in going back and forth to Cape Fear Technical Institute, I say I am sure they acquired another car. I knew they also had another passenger car. I knew they had two cars. I can't remember exactly, but my best recollection is that they had had this car which we were involved in the accident some little time, but after we started riding together. I had been riding with Harry about two or three weeks, been swapping rides, about two or three weeks, something like that, I think it was about a month, but, as I said, I went to New York in between in there which would make us to have ridden about three weeks.

\*     \*     \*

"As to where I saw Mrs. Thomas driving a 1961 Ford automobile that was involved in this accident, I said I wasn't quite sure if I saw her. It was when Harry rode with me and she drove the car back home, or drove the car away, put it that way. I don't know where she went, but that is where I saw her. It was not around the farm at their home, I didn't meet them on the farm, but out on the highway where we met every morning. When Harry would ride with me, she would usually bring him to the meeting place in that car, not always, but part of the time they did. As far as I remember, that is the only time I recall ever seeing Mrs. Thomas drive the car. I saw Mr. Thomas, Sr. drive it the same way, taking Harry to the meeting place and going back."

In respect to the family purpose doctrine of automobiles, this is said in 1 Strong, N. C. Index 2d, Automobiles, § 108, p. 592:

"The doctrine is predicated upon the principle of *respondeat superior*, and imposes liability on the parent for the negligent operation of the car by a member of the family when the parent owns the automobile for the convenience and pleasure of the family and permits a member of the family to use the car with the parent's consent and approval. Consent of the parent may be implied from the circumstances, such as the habitual or customary use of the car by the member of the family."

The evidence, when considered in the light most favorable to the plaintiff and giving her the benefit of every reasonable inference of fact to be drawn therefrom, tends to show that Harry Doyle Thomas, Jr., was operating the automobile in which plaintiff was

riding when she was injured at an excessive and unsafe rate of speed under the hazardous driving conditions then and there existing, in that he was driving the car at about 55 miles per hour, on a slick highway, during a heavy downpour of rain, and failed to maintain a proper lookout. The evidence also clearly tends to establish this absence of a proper lookout in that he maintained this excessive speed of about 55 miles per hour to within five or six car lengths of an automobile sitting on the highway immediately behind a stopped school bus. The car had its brake lights on, and the school bus was flashing its warning lights. This evidence is manifestly sufficient to support a jury's finding that Harry Doyle Thomas, Jr., the driver of the car, was guilty of actionable negligence, as alleged in the complaint.

Continuing to view the evidence in the light most favorable to the plaintiff and giving her the benefit of every reasonable inference deducible therefrom, in our opinion, and we so hold, it would permit a jury to find that Harry Doyle Thomas, Jr., was a minor son of Mr. and Mrs. Harry Doyle Thomas, Sr., and a resident of their household; that his parents owned the automobile for the convenience and pleasure of the family; and that defendants admitted in their answer to the amended complaint that Harry Doyle Thomas, Jr., was operating the automobile "with the consent, permission and knowledge of Mr. and Mrs. Harry Doyle Thomas, Sr." Hence, the court properly denied the parents' motion for judgment of compulsory nonsuit, as well as the motion for judgment of compulsory nonsuit made by Thomas, Jr. In so holding we wish to make it clear that parental consent to the use of the automobile by Thomas, Jr., does not have to be implied here because of the defendants' admission in their answer. There are discrepancies and contradictions in the plaintiff's evidence, but "discrepancies and contradictions, even in plaintiff's evidence, are for the twelve and not for the court," *Brafford v. Cook*, 232 N.C. 699, 62 S.E. 2d 327, and do not justify a nonsuit, *Keaton v. Taxi Co.*, 241 N.C. 589, 86 S.E. 2d 93.

We have carefully examined the defendants' assignments of error as to the evidence and as to the charge of the court. The jury, under application of settled principles of law, resolved the issues of fact against the defendants. While the appellants' well-prepared brief presents contentions involving distinctions and close differentiations, a careful examination of the assignments of error discloses no new question or feature requiring extended discussion. Neither reversible nor prejudicial error has been made to appear. The verdict and judgment will be upheld.

No error.