# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 6, 2011 Session

## ARLENE R. STARR v. PAUL B. HILL, SR., ET AL.

**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**No. CT-006836-03      James F. Russell, Judge**

---

**No. W2009-00524-SC-R11-CV - Filed August 31, 2011**

---

A father and his sixteen-year-old son were sued after the son was involved in an accident while driving a vehicle owned, insured, and provided to him by his father. The basis for the suit against the father was the family purpose doctrine, which imposes vicarious liability on the owner of a vehicle for the negligent operation of the vehicle by a family member. Whether the family purpose doctrine applies to the father requires us to address these issues: (1) whether the father, who does not reside in the same household as the son, was a head of the household under the family purpose doctrine; (2) whether the vehicle was maintained for the comfort or pleasure of the family or solely for use by the son; and (3) whether the vehicle was being driven with the father's permission such that he had control over its use. The essential elements of the family purpose doctrine are that the owner must be a head of the household who furnishes and maintains the vehicle for the purpose of providing pleasure or comfort for the family, and at the time of the injury, the vehicle must have been driven in furtherance of that purpose with the head of the household's express or implied permission. The trial court granted summary judgment to the father, finding that the family purpose doctrine did not apply. The Court of Appeals reversed, ruling that the family purpose doctrine applied to the father as a matter of law. We hold that the father was a head of the household because he had a family relationship with his son and a duty to support his son and the father furnished and maintained the vehicle for the purpose of providing pleasure or comfort to the family. However, a genuine issue of material fact remains as to whether the father had sufficient control over the vehicle. We vacate the decision of the Court of Appeals and remand for trial.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Vacated; Cause Remanded**

SHARON G. LEE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ. joined.

Kirk A. Caraway and Heather W. Fletcher, Memphis, Tennessee, for the appellant, Paul B. Hill, Sr.

S. Newton Anderson and Paul R. Sciubba, Memphis, Tennessee, for the appellee, Arlene R. Starr.

**OPINION**

On Christmas Eve 2002, Paul B. Hill, Jr. ("Son"), who was sixteen years old, was returning from a holiday shopping trip with his sister and her friend, when the vehicle he was driving collided with another vehicle. Arlene R. Starr ("Plaintiff"), a passenger in the other vehicle, was allegedly injured. She filed suit against Paul B. Hill, Sr., ("Father"), who was the owner of the vehicle, and Son.[1] She asserted that Son's negligent conduct caused the accident and that Father, as the owner of the vehicle, was liable based on the family purpose doctrine. At the time of the accident, Son's parents were divorced, and Father did not live in the same household as Son. Father, as required by the terms of his divorce decree, had purchased the vehicle for Son when he turned sixteen years old. Father owned and insured the vehicle; Son drove the vehicle.

Father filed a motion for summary judgment, arguing that the family purpose doctrine was not applicable to him because at the time of the accident he did not reside with Son, he provided the vehicle only for the pleasure or comfort of Son, not the family, and he did not have day-to-day control over Son. Plaintiff filed a motion for partial summary judgment, arguing that Father was a head of household under the family purpose doctrine and therefore the doctrine applied to Father as a matter of law. The trial court granted Father's motion for summary judgment. The Court of Appeals reversed the trial court, ruling that the family purpose doctrine applied as a matter of law.

We granted Father's application for permission to appeal to address the following issues: (1) whether Father, who does not reside with Son, was a head of the household for purposes of the family purpose doctrine; (2) whether the vehicle, which Father provided to

_____

[1] Plaintiff later filed a Tennessee Rule of Civil Procedure 41 voluntary nonsuit of her claim against Son.

Son in compliance with terms of a divorce decree and for Son's sole use, was provided and maintained for the pleasure or comfort of the family; and (3) whether the vehicle was being driven with Father's permission such that he had control over its use.

The case before us involves a grant of summary judgment. Summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; Hannan v. Alltel Publ'g Co., 270 S.W.3d 1, 5 (Tenn. 2008). When ruling on a summary judgment motion, the trial court must accept the nonmoving party's evidence as true and resolve any doubts concerning the existence of a genuine issue of material fact in favor of the nonmoving party. Id. at 83. A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 89 (Tenn. 2000). The resolution of a motion for summary judgment is a matter of law; therefore, we review the trial court's judgment de novo with no presumption of correctness. Martin, 271 S.W.3d at 84.

Tennessee courts have treated the application of the family purpose doctrine as a question for the trier of fact when the facts are disputed or subject to more than one interpretation, and as a question of law for the court when the facts are undisputed and subject to only one interpretation. See, e.g., Droussiotis v. Damron, 958 S.W.2d 127 (Tenn. Ct. App. 1997); Gray v. Amos, 869 S.W.2d 925 (Tenn. Ct. App. 1993); Redding v. Barker, 230 S.W.2d 202 (Tenn. Ct. App. 1950). Other jurisdictions are in accord. See, e.g., First-City Bank & Trust Co. v. Doggett, 316 S.W.2d 225 (Ky. Ct. App. 1958); Madrid v. Shryock, 745 P.2d 375 (N.M. 1987); Reid v. Swindler, 154 S.E.2d 910 (S.C. 1967). Application of the family purpose doctrine involves a mixed question of law and fact. Therefore, "our standard of review is de novo with a presumption of correctness extending only to the lower court's findings of fact." Abdur'Rahman v. Bredesen, 181 S.W.3d 292, 305 (Tenn. 2005). Although a presumption of correctness attaches to the trial court's findings of fact, we are not bound by the trial court's determination of the legal effect of its factual findings, nor by its determination of a mixed question of law and fact. State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Trust, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006). If we find that all elements of the family purpose doctrine are established by undisputed facts, we may properly conclude that the doctrine applies as a matter of law and affirm the grant of summary judgment by the Court of Appeals. However, if we conclude that there is a dispute as to material facts necessary to establish an element of the doctrine, we must reverse and remand to the trial court for further proceedings.

*The Family Purpose Doctrine*

The family purpose doctrine was first recognized in Tennessee in King v. Smythe, 204 S.W. 296 (Tenn. 1918), just ten years after the introduction of the Ford Model T automobile when the automotive industry was still in its infancy. This doctrine imposes vicarious liability on a head of the household for the negligent operation of a motor vehicle by a family member provided that the head of the household maintains the vehicle "for the purpose of providing pleasure or comfort for his or her family," and "the family purpose driver [was] using the motor vehicle at the time of the injury 'in furtherance of that purpose with the permission, either express or implied of the [head of the household] owner.'" Strine v. Walton, 323 S.W.3d 480, 489 (Tenn. Ct. App. 2010) (quoting Redding v. Barker, 230 S.W.2d 202, 205 (Tenn. 1950)) (emphasis omitted); Camper v. Minor, 915 S.W.2d 437, 447 (Tenn. 1996).

The doctrine is "a court-created legal fiction" that employs agency principles to hold the owner of the vehicle vicariously liable. Thurmon v. Sellers, 62 S.W.3d 145, 156 (Tenn. Ct. App. 2001). As one learned legal treatise has observed,

> [s]ometimes it is said that the owner would be liable for the negligence of a chauffeur whom he hires to drive his family, and therefore should be liable when he entrusts the same task to a member of his family instead. There is obviously an unblushing element of fiction in this manufactured agency; and it has quite often been recognized, without apology, that the doctrine is an instrument of policy, a transparent device intended to place the liability upon the party most easily held responsible.

W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 73, at 524 (5th ed. 1984) (footnotes omitted). While the doctrine is grounded in the law of agency, as the Court clarified in King, "[t]he law of agency is not confined to business transactions," and when, as happened in that case, a father buys a car "for the pleasure and entertainment of his family, and . . . gives his . . . son, who is a member of his family, permission to use it for pleasure, . . . the son is in the furtherance of this purpose of the father while driving the car for his own pleasure." 204 S.W. at 298. The doctrine is based on the theory that a family member who provides and maintains a vehicle for the pleasure or convenience of the family makes the vehicle's use his or her business, and that in using the vehicle, the family members are furthering the purpose for which it is maintained. Redding, 230 S.W.2d at 205 (citing Scates v. Sandefer, 44 S.W.2d 310, 311 (Tenn. 1931)).

As a matter of public policy, we choose to apply the doctrine to create an incentive for a parent to exercise control over a child's use of the vehicle and to make available another "pocket" from which an injured party may collect compensation. See Camper, 915 S.W.2d at 447-48; King, 204 S.W. at 298. The need for a responsible adult between the public and a young driver is more compelling today than it was in the early part of the last century. There are a substantially greater number of vehicles on the road than there were ninety years ago,[2] and there is an increased risk of accident. Teen drivers, ages 16-19, are more likely to be involved in a vehicular accident than any other age group and account for a disproportionate share of the total cost of motor vehicle injuries.[3] As one court has observed, "[t]he loss of life resulting from inexperienced teen drivers is a national problem of epidemic proportions." People v. Badke, 865 N.Y.S.2d 488, 494 (N.Y. Co. Ct. 2008). The family purpose doctrine serves a vital function by providing parents with additional incentive to ensure that their children operate motor vehicles in a safe manner.

The second rationale for the family purpose doctrine – to ensure that innocent members of the public have a source of reasonable compensation – remains a strong reason for its retention despite the enactment of Tennessee's Financial Responsibility Law. Tenn. Code Ann. §§ 55-12-101 to -140 (2008 & Supp. 2010). The Financial Responsibility Law requires that the driver of a motor vehicle involved in an accident resulting in death, injury, or property damage of $50 or more submit insurance documentation or other evidence of financial responsibility to the officer investigating the accident. See Tenn. Code Ann. §§ 55-12-139(b) and 55-10-106(a). Proof of financial responsibility includes documentation of insurance, such as an insurance card, from an insurance company stating that a policy of liability insurance has been issued.[4] The Financial Responsibility Law does not require

---

[2] In 1920, passenger car registrations in the United States totaled 8,131,522. The American Car Since 1775 p. 491 (L. Scott Bailey et al. eds., Kuztown Publishing 1971). By 1960, this figure had increased to 61,671,390 and by 2008 to 137,079,843. Report of the U.S. Bureau of Transp. Res. and Innovative Tech. Admin. available at http://www.btsgov/publications/national_transportation_statistics/html/table_01_11.

[3] Drivers in the 16-19 age group are four times more likely than older drivers to be in a motor vehicle crash. Although persons ages 15-24 comprise only 14% of the national population, they account for 30%, or $19 billion, of the total costs of motor vehicle injuries among males and 28%, or $7 billion, of the total costs of motor vehicle injuries among females. Teen Drivers: Fact Sheet, Centers for Disease Control and Prevention, http://www.cdc.gov/MotorVehicleSafety/Teen_Drivers/teendrivers_factsheet.html.

[4] Tennessee Code Annotated section 55-12-139(b)(1) (2008 & Supp. 2010) provides that "financial responsibility" means "[d]ocumentation, such as the declaration page of an insurance policy, an insurance binder, or an insurance card from an insurance company authorized to do business in Tennessee, stating that a policy of insurance meeting the requirements of this chapter has been issued." Tennessee Code Annotated

(continued...)

vehicle liability insurance, but the statute contemplates that most drivers will comply with this requirement by purchasing liability insurance. Purkey v. Am. Home Assur. Co., 173 S.W.3d 703, 706-07 (Tenn. 2005).

Although the Financial Responsibility Law may provide innocent victims with some assurance that they will not be totally without recourse in the event they suffer injury, purchase of liability insurance is not required when a vehicle is acquired and the extent of required financial responsibility is only twenty-five thousand dollars $25,000 for bodily injury to or death of one person, $50,000 for bodily injury to or death of two or more persons in any one accident, and $15,000 for damage to property in any one accident. Tenn. Code Ann. § 55-12-102(12)(D)(i). The Financial Responsibility Law is an inadequate substitute for the family purpose doctrine.[5]

---

[4](...continued)
section 55-12-102(12)(D)(i) (2008 & Supp. 2010) provides that with respect to insurance coverage, proof of financial responsibility includes the following:

> *(a)* A written proof of liability insurance coverage provided by a single limit policy with a limit of not less than sixty thousand dollars ($60,000) applicable to one accident;
> *(b)* A split-limit policy with a limit of not less than twenty-five thousand dollars ($25,000) for bodily injury to or death of one (1) person, not less than fifty thousand dollars ($50,000) for bodily injury to or death of two (2) or more persons in any one (1) accident, and not less than fifteen thousand dollars ($15,000) for damage to property in any one (1) accident.
> *(c)* A deposit of cash with the commissioner in the amount of sixty thousand dollars ($60,000); or
> *(d)* The execution and filing of a bond with the commissioner in the amount of sixty thousand dollars ($60,000);

In December 2002, when the accident at issue occurred, the statute's coverage requirements were otherwise the same as those currently in place, except the split-limit policy coverage requirement for damage to property was only $10,000, rather than $15,000. See Tenn. Code Ann. § 55-12-102(12)(C)(i),(ii) (1998).

[5] We also note that many drivers in our state simply disregard the requirements of the Financial Responsibility Law and fail to obtain car liability insurance. One study shows that in 2004, Tennessee ranked sixth nationally in estimated percentage of uninsured drivers, with an estimated 21.2 percent of uninsured drivers compared to a national average of 14.6 percent. See Offices of Research and Educ. Accountability, An Analysis of Tennessee's Motor Vehicle Liability Insurance Limits, at 3 (2006) http://comptroller.state.tn.us/cpdivorea.htm.

The family purpose doctrine remains an important component of the tort law of this state and other states,[6] and the underlying principles that prompted adoption of the doctrine in Tennessee in 1918 remain valid reasons for its retention today.

*Head of Household*

Father and Suzanne Hill ("Mother") separated in August of 2002 and were divorced in October of 2002. Following the separation, Son resided with Mother and his younger sister; Father resided with his parents. The divorce decree, which incorporated a permanent parenting plan and marital dissolution agreement, provided that Mother would be the primary residential parent of Son and his sister, with Father having parenting time on alternate weekends, overnight on Wednesdays, and on various holidays. Mother and Father had decision-making authority regarding the day-to-day care and control of the children while the children were residing with them; either parent was authorized to make emergency decisions affecting the children's health and safety; decisions regarding each child's extracurricular activities would be made jointly by both parents; and Mother had an affirmative obligation to consult with Father on all major decisions affecting the children. Father was required to procure an automobile for each child at age sixteen and pay the automobile insurance.

These facts reflect the changes in our society since the adoption of the family purpose doctrine in 1918. A greater number of divorces, single parent homes, and teenage drivers are an undeniable and pervasive reality of our current life. In 1916, not long before we adopted the family purpose doctrine, the divorce rate was approximately ten percent, whereas by 2008

---

[6] Currently, the doctrine is recognized at common law in Alaska, see Burns v. Main, 87 F. Supp. 705 (D. Alaska 1950); Arizona, see, e.g., Pesqueira v. Talbot, 441 P.2d 73 (Ariz. Ct. App. 1968); Colorado, see, e.g., Hasegawa v. Day, 684 P.2d 936 (Colo. App. 1983), overruled on other grounds by Casebolt v. Cowan, 829 P.2d 352 (Colo.1992); Connecticut, see, e.g., Cogan v. Chase Manhattan Auto Fin. Corp., 882 A.2d 597 (Conn. 2005); Georgia, see, e.g., Williams v. Gant, 462 S.E.2d 179 (Ga. Ct. App. 1995); Kentucky, see, e.g., Lawhorn v. Holloway, 346 S.W.2d 302 (Ky. 1961); Nebraska, see, e.g., Dunn v. Hemberger, 430 N.W.2d 516 (Neb. 1988); Nevada, see, e.g., Jones v. Golick, 206 P. 679 (Nev. 1922); New Mexico, see, e.g., Madrid v. Shryock, 745 P.2d 375 (N.M. 1987); North Carolina, see, e.g., Thomson v. Thomas, 156 S.E.2d 850 (N.C. 1967); North Dakota, see, e.g., Malchose v. Kalfell, 2003 ND 75, 664 N.W.2d 508; Oregon, see, e.g., Fisher v. Pippin, 595 P.2d 513 (Or. 1979); South Carolina, Crowder v. Carroll, 161 S.E.2d 235 (S.C. 1968); Washington, see, e.g., Kaynor v. Farline, 72 P.3d 262 (Wash. Ct. App. 2003); and West Virginia, see, e.g.,Bell v. West, 284 S.E.2d 885 (W. Va. 1981). In addition, California, Delaware, the District of Columbia, Iowa, Michigan, Minnesota, and New York have statutes that encompass the doctrine. See respectively, Cal. Veh. Code § 17708 (2010); Del. Code Ann. tit. 21, § 6105 (2011); D.C. Code § 50-1301.08 (2011); Iowa Code § 321.493(2)(a) (2011); Mich. Comp. Laws § 257.401(1) (2011); Minn. Stat. Ann. § 169.09(5a) (West 2010); and N.Y. Veh. & Traf. Law § 388(1) (2011).

that rate had increased to almost fifty percent.[7]  Further, studies estimate that half of all American children will experience the breakup of their parents' marriage with the necessary result that one parent will live apart from the child at least for certain durations.[8]  While our society has changed, the purpose and essential elements of the family purpose doctrine have remained relatively constant.  For the doctrine to remain viable, it too must change with the times and be interpreted in a manner to effectuate the important policy considerations which support it.  The application of the doctrine should not be undermined by the mere fact that a parent is no longer residing in the same physical location as the family member who is driving that parent's motor vehicle.  Therefore, the common residency of the owner and driver is not required for the application of the doctrine.

Our review of the common law in Tennessee and elsewhere reveals that the identification of a family member as a head of the household is primarily based on his or her family relationship and duty to support the driver rather than place of residency.  In fact, both parents can be considered a head of household under the doctrine.  Johnson v. Steverson, No. W1999-00627-COA-R3-CV, 2000 WL 1285282 (Tenn. Ct. App. Aug. 30, 2000).  In Woodfin v. Insel, 13 Tenn. App. 493 (Tenn. Ct. App. 1931), the plaintiffs sued a grandmother who lived with her adult daughter and minor grandson after the grandson was involved in a collision while driving the grandmother's car.  The appellate court's determination that the grandmother was not the head of the household was based in part on the finding that she owed her children or grandchildren no duty of support.  Id. at 499.  In Adkins v. Nanney, 82 S.W.2d 867 (Tenn. 1935), the father was sued after his adult son was involved in an accident while driving the father's car.  Although the son lived with the father, the son was self-supporting.  Id. at 867-68.  Because the son was not subject to the father's control and the father had no duty to provide for the adult son's support, comfort, and pleasure, the court ruled that the family purpose doctrine was not applicable.  Id. at 868.  In Amari v. Russell, No. 87-188-II, 1988 WL 50001 (Tenn. Ct. App. May 20, 1988), the intermediate appellate court ruled that the family purpose doctrine was not applicable where the forty-eight-year-old son of the defendant father "did not live with his father nor was he supported by his father."  Id. at *5.  Finally, in Henley v. Amacher, No. M1999-02799-COA-R3-CV, 2002 WL 100402 (Tenn. Ct. App. Jan. 28, 2002), a father was sued for injuries incurred as the result of his sixteen-year-old son's negligent operation of a car owned by the father.  Although at the time of the accident, the son was living with his grandmother, id. at

---

[7] See U.S. Census Bureau, Statistical Abstract of the United States: 2011 at 840 (2011) (showing that in 1916 there were 1.08 divorces for every ten marriages and in 2008 there were 4.91 divorces for every ten marriages).

[8] The Life Course of Children of Divorce, Am. Soc. Rev., 656-667 (1983).

*1, the Court of Appeals found that a jury could nevertheless have concluded that the father was the head of the family, warranting application of the family purpose doctrine. Id. at *16.

Other jurisdictions addressing the issue have recognized that common residency of the parent and child is not required for the application of the family purpose doctrine. In Alexander v. Kendrick, 213 S.E.2d 911, 913 (Ga. Ct. App. 1975), the father was subject to liability under the family purpose doctrine as the head of the household where he and the mother were divorced and his daughter, who lived with the mother, was involved in an accident while driving a car owned by the father. In a case applying Nebraska law, Wiese v. Hjersman, No. 4:04CV3195, 2006 WL 2571372 (D. Neb. 2006), a nine-year-old boy, who was track-riding a motocross bike, struck and injured the plaintiff pedestrian. The plaintiff, relying on the family purpose doctrine, sued the boy's father, who owned the bike. Id. at *2. As in Tennessee, the doctrine required that a person invoking the doctrine prove that "the person sought to be charged with liability was the head of his or her family." Id. at *5 (quoting Leonard v. Wilson, 468 N.W.2d 604, 608 (Neb. 1991)). The father and the boy's mother were divorced and living apart at the time of the accident, and the boy resided with the mother. Id. The district court held that the doctrine did "not require the head of household to be the custodial parent, merely the financially responsible parent," id. at *6, indicating that it is the underlying support of the responsible owner that is vital to the doctrine's effectiveness. In its ruling, the court quoted the following language from a well-respected legal treatise, essentially echoing the previously noted rationales relied on by the courts of our state in King and Camper:

> The dangers of the public from incompetent and financially irresponsible drivers is a menace of such gravity that every precaution is necessary to reduce such perils to the minimum. When a parent provides an automobile for the pleasure and convenience of his family, it is not too much to demand that he insure society against its negligent use for such purposes. He may avail himself of the protection of insurance against such hazards, but he should not be permitted to throw the risk upon the innocent victims of his family's negligence in such an agency as an automobile with which he has provided them.

Wiese, 2006 WL 2571372, at *6 (quoting 1 Harper & James, The Law of Torts, § 8.13, p. 661).

We conclude that in determining whether the owner of a vehicle is to be designated a head of the household for purposes of the family purpose doctrine, appropriate factors to

consider include whether there is a family relationship between the owner and the driver and whether the owner has a duty to support the driver. Applying these factors to the case before us, we conclude that Father was a head of the household. Father had a family relationship with Son and had a duty to support him. Father's duty of support derived from Tennessee Code Annotated section 34-1-102(a) (2007), which provides that "[p]arents are the joint natural guardians of their minor children, and are equally and jointly charged with their care, nurture, welfare, education and support," and from the divorce decree, which required him to make monthly child support payments to Mother.[9] We conclude that, as a matter of law, Father was a head of the household for purposes of the family purpose doctrine.

*Vehicle Maintained for the Pleasure or Comfort of Family*

The family purpose doctrine applies only if the vehicle is "maintain[ed] . . . for the purpose of providing pleasure or comfort for [the] family." Camper, 915 S.W.2d at 447. This "pleasure or comfort" language became part of the doctrine at a time when vehicles represented a newly available technology and were used primarily for recreation, having not yet become a necessary component of everyday life. Father argues that he provided and maintained the vehicle only for Son's pleasure or comfort, not for the family's pleasure or comfort. Father's interpretation of this requirement is too restrictive. Our case law supports a broader view.

In Gray v. Mitsky, 280 S.W.3d 828 (Tenn. Ct. App. 2008), the plaintiff sued the father of the driver of a car that rear-ended her vehicle. The father, who was the registered owner of the car, testified that he had given his son the car and that his son was not using the car for a family purpose. Id. at 829. The son testified that once his father gave him the car, it was the son's alone, that he was completely responsible for it, and that he was not using it for a family purpose. Id. His mother testified that she and the father had cancelled their insurance coverage of the car because it had been given to the son. Id. Nevertheless, the Court of Appeals held that the family purpose doctrine applied, stating that "a driver can be operating a vehicle for a family purpose 'even if the driver is only using the automobile for his own pleasure or convenience.'" Id. at 831 (quoting Thurmon v. Sellers, 62 S.W.3d 145, 156 (Tenn. Ct. App. 2001)); see also Calhoun v. Eaves, 152 S.E.2d 805, 808 (Ga. Ct. App. 1966) (noting that while it is essential that the vehicle be furnished by the head of the family for a family purpose, "[t]he vehicle may be furnished . . . for the use of less than all members of the family").

---

[9] The permanent parenting plan provided in pertinent part that "Father shall pay Three Thousand Seven Hundred Dollars ($3,700) in child support from September, 2002 through May, 2004 when the oldest child, [Son], shall reach the age of emancipation."

Even though Father may have subjectively intended to give the vehicle just to Son for Son's sole use, in doing so, he provided a benefit to the family unit by providing Son with a source of transportation. At the time of the accident, Son was with his sister on a holiday shopping trip; this was a benefit to the family. There is no genuine issue of material fact as to whether the vehicle was maintained for the purpose of providing pleasure or comfort to the family.

*Permissive Use*

Finally, the doctrine requires that the vehicle be operated with the express or implied consent of the owner. Camper, 915 S.W.3d at 447. In other words, the owner must have some control over the vehicle's use. "[C]ontrol over the use of the vehicle is the critical element. The owner or provider of the vehicle must have given the actual or implied consent to the operator to drive the vehicle." 4 J.D. Lee & Barry A. Lindahl, Modern Tort Law: Liability and Litigation (2d ed. 2006) § 34:7, at 34-9 (footnote omitted). The family purpose doctrine is based in part on the factual presumption that the child is subject to parental control. Camper, 915 S.W.2d at 447; Gray, 869 S.W.2d at 927; Adkins, 82 S.W.2d at 868. Indeed, in King, the seminal family purpose doctrine case in this state, this Court implicitly acknowledged the significance of the element of control justifying imposition of vicarious liability as a means of advancing the doctrine's goal of securing public safety, stating, "[t]he father, as owner of the automobile and as head of the family, can prescribe the conditions upon which [the vehicle] may be run upon the roads and streets, or he can forbid its use altogether." King, 204 S.W. at 298; see also Meinhardt v. Vaughn, 17 S.W.2d 5, 7 (Tenn. 1929) (stating that "[t]he furnishing, maintenance, and control [of the vehicle] are apparently the essential predicates of liability of the responsible parent," and that "[l]iability, under [the] doctrine . . . depends upon control and use") (internal quotes omitted). In Boles v. Russell, 252 S.W.2d 801 (Tenn. Ct. App. 1952), although the father owned the automobile that his son was driving when an accident occurred, the court found that the family purpose doctrine did not apply, noting that the trier of fact "could look behind the title in determining the question of the right of control. . . . Liability without personal fault or control or the right of control over the acts of another whose negligence causes an injury is contrary to accepted principles of legal liability." Id. at 803.

Other jurisdictions are in accord with Tennessee courts' requirement of this element of control. See, e.g., Griffin v. Pancoast, 125 S.E.2d 310, 313 (N.C. 1962) (noting that although "ownership presumptively indicates the right to control, . . . one may in fact exercise control . . . without in fact being the owner," and that, under the family purpose doctrine, "[t]he test is not who owns the vehicle but control or the right to control"); Mortensen v. Knight, 305 P.2d 463, 468 (Ariz. 1956) ("[T]he family purpose doctrine . . . rests not on the ownership of the vehicle but upon the control and use.").

-11-

Plaintiff's motion for partial summary judgment was supported in part by reference to Father's testimony that "as far as [Father] was concerned, [Son] was permitted to use the car for whatever purpose he wanted to." While this testimony demonstrates that Father relinquished any right he may have had to exercise control over Son's use of the vehicle, it does not establish that at the time of the accident he *had* the right to exercise such control. While Father also testified that he was "jointly going to be dealing with the decision-making related to . . . [Son's] extracurricular activities," the parenting plan provided that decisions regarding the day-to-day care and control of each child would be made by the parent with whom the child was residing. Father testified that "because [Father] did not live with [Son] at [the time of the accident], [Father] relied upon [Mother] to set the parameters of [Son's] driving privileges" and "deferred to Mother to make the day-to-day decisions in the children's lives." The question of whether Son's driving was an extracurricular activity, in which event Father had a right to control Son's use of the vehicle, or a day-to-day activity, in which event Father had no right to control Son's use of the vehicle, is a genuine issue of material fact appropriately addressed by the jury rather than by this Court. Accordingly, we hold that the Court of Appeals erred in granting partial summary judgment in favor of Plaintiff and ruling that the family purpose doctrine applies to Father as a matter of law.

*Conclusion*

At the time of the accident, Father was a head of the household and Father maintained the vehicle for the purpose of providing pleasure or comfort for the family. However, a genuine issue of material fact remains as to whether Father had sufficient control over the vehicle. Accordingly, we vacate the Court of Appeals' partial summary judgment in favor of the Plaintiff and remand for trial. Costs are assessed equally to the parties and their respective sureties, for which execution may issue, if necessary.

_____
SHARON G. LEE, JUSTICE