# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Submitted on Briefs November 1, 2016

## ROBERTA PIPER, FOR HERSELF AS SPOUSE AND WIDOW OF MERLE PIPER, DECEASED v. CUMBERLAND MEDICAL CENTER ET AL.

### Appeal from the Circuit Court for Cumberland County
### No. CC1-2015-CV-6044    Amy Hollars, Judge

_____

### No. E2016-00532-COA-R3-CV-FILED-JANUARY 20,  2017

_____

The plaintiff filed this health care liability action on behalf of herself and her deceased husband, alleging that his death was caused by the negligent care he received from the defendant hospital and physicians.  The defendants moved to dismiss the plaintiff's claims because she failed to comply with the requirements of Tennessee Code Annotated § 29-26-121(a)(2)(D) and (E).  The trial court granted the motions and dismissed the plaintiff's claims.  The plaintiff has appealed.  Discerning no reversible error, we affirm the trial court's judgment of dismissal.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Ronald Aronds, Ooltewah, Tennessee, for the appellant, Roberta Piper.

F. Michael Fitzpatrick and Rachel Park Hurt, Knoxville, Tennessee, for the appellee, Cumberland Medical Center.

James G. O'Kane, Knoxville, Tennessee, for the appellee, Ayca Kabasakal, M.D.

David E. Waite and Richard A. McCall, Knoxville, Tennessee, for the appellee, Merhaf K. Zeino, M.D.

## OPINION

### I. Factual and Procedural Background

Roberta Piper, as spouse and widow of Merle Piper ("Decedent"), filed a health care liability action on October 13, 2015, in the Circuit Court for Cumberland County. Ms. Piper asserted in her complaint that the Decedent was treated by defendants Merhaf K. Zeino, M.D., and Ayca Kabasakal, M.D., at the Cumberland Medical Center ("CMC") from October 18, 2014, until his death on October 28, 2014.[1] According to the complaint, Decedent sought treatment at CMC for fatigue and underwent a urinalysis. Decedent was diagnosed with stage four kidney failure. Ms. Piper alleged in the complaint that on October 28, 2014, Dr. Kabasakal remarked to Ms. Piper that "it was a shame they couldn't treat her husband due to his religious beliefs." Ms. Piper subsequently discovered that Decedent's chart incorrectly listed his religious affiliation as Jehovah's Witness. Although Ms. Piper corrected this misinformation and gave permission for treatment, Decedent passed away that same night. Ms. Piper also asserted in the complaint that the defendant physicians were negligent because they incorrectly assumed that Decedent's religious beliefs guaranteed that he would reject available life-saving treatment and because they failed to ask Decedent or Ms. Piper for permission to administer such treatment.

According to the complaint, Ms. Piper purportedly complied with the notice provisions contained in Tennessee Code Annotated § 29-26-121 by delivering the required notices to Defendants at least sixty days before the filing of the complaint. Ms. Piper attached copies of undated postal receipts addressed to each defendant. However, the record demonstrates that Ms. Piper did not attach to the complaint a certificate of mailing from the United States Postal Service, an affidavit regarding her mailing of the notices, or copies of the notices. *See* Tenn. Code Ann. § 29-26-121(a)(3), (4) (Supp. 2016).[2]

Dr. Kabasakal filed a motion to dismiss on November 30, 2015, asserting that Ms. Piper had failed to comply with the mandatory pre-suit notice requirements contained in Tennessee Code Annotated § 29-26-121. Dr. Kabasakal asserted that Ms. Piper failed to provide the required HIPAA-compliant medical authorization and failed to provide a list of other health care providers receiving notice. Dr. Kabasakal also complained that Ms. Piper failed to demonstrate that the notice was timely sent because the letter and the

---

[1] Dr. Kabasakal, Dr. Zeino, and CMC are all named defendants in this action and shall hereafter be referred to collectively as "Defendants."

[2] Inasmuch as no party has raised an issue with regard to these deficiencies, we decline to further address these additional omissions on appeal.

postal receipts attached to the complaint were undated. In support of the motion, Dr. Kabasakal attached an affidavit, wherein she stated that the only document she received from Ms. Piper or her counsel prior to the filing of the complaint was the undated notice letter. Dr. Kabasakal attached the undated notice letter she had received to evince that plaintiff failed to identify other health care providers.

CMC and Dr. Zeino filed similar motions to dismiss on December 2, 2015, and December 3, 2015, respectively. The trial court conducted a hearing regarding the pending motions on January 29, 2016. Following the hearing, the court entered an order granting the motions to dismiss on February 12, 2016. In this order, the court found that Ms. Piper had failed to comply with Tennessee Code Annotated § 29-26-121(a)(2)(D) and (E) and that such failure was fatal to her claims. Ms. Piper timely appealed.

## II. Issue Presented

Ms. Piper presents the following issue for our review, which we have restated slightly:

> Whether the trial court erred by dismissing Ms. Piper's health care liability action for failure to comply with the notice requirements contained in Tennessee Code Annotated § 29-26-121.

## III. Standard of Review

Our Supreme Court has elucidated the following regarding the standard of review applicable to a motion to dismiss a health care liability action based upon the plaintiff's noncompliance with Tennessee Code Annotated § 29-26-121:

> The proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29-26-121 and Tennessee Code Annotated section 29-26-122 is to file a Tennessee Rule of Procedure 12.02 motion to dismiss. In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof. Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so. Based on the complaint and any other relevant evidence submitted by the parties, the trial court must determine whether the plaintiff has complied with the statutes. If the trial court determines that the plaintiff has not complied with the statutes, then the trial court may consider whether the

3

plaintiff has demonstrated extraordinary cause for its noncompliance. If the defendant prevails and the complaint is dismissed, the plaintiff is entitled to an appeal of right under Tennessee Rule of Appellate Procedure 3 using the standards of review in Tennessee Rule of Appellate Procedure 13. If the plaintiff prevails, the defendant may pursue an interlocutory appeal under either Tennessee Rule of Appellate Procedure 9 or 10 using the same standards.

Because the trial court's denial of the Defendants' motion involves a question of law, our review is de novo with no presumption of correctness. *Graham v. Caples,* 325 S.W.3d 578, 581 (Tenn. 2010). The question of whether [the plaintiff] has demonstrated extraordinary cause that would excuse compliance with the statutes is a mixed question of law and fact, and our review of that determination is de novo with a presumption of correctness applying only to the trial court's findings of fact and not to the legal effect of those findings. *Starr v. Hill,* 353 S.W.3d 478, 481-82 (Tenn. 2011). We review the trial court's decision to excuse compliance under an abuse of discretion standard. "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." *Wilson v. State,* 367 S.W.3d 229, 235 (Tenn. 2012) (citing *Wright ex rel. Wright v. Wright,* 337 S.W.3d 166, 176 (Tenn. 2011)). We examine the legal sufficiency of the complaint and do not consider the strength of the plaintiff's evidence; thus, all factual allegations in the complaint are accepted as true and construed in flavor of the plaintiff. *Lind v. Beaman Dodge, Inc.,* 356 S.W.3d 889, 894 (Tenn. 2011).

* * *

The leading rule governing our construction of any statute is to ascertain and give effect to the legislature's intent. *Walker v. Sunrise Pontiac-GMC Truck, Inc.,* 249 S.W.3d 301, 309 (Tenn. 2008). To that end, we start with an examination of the statute's language, *Curtis v. G.E. Capital Modular Space,* 155 S.W.3d 877, 881 (Tenn. 2005), presuming that the legislature intended that each word be given full effect. *Lanier v. Rains,* 229 S.W.3d 656, 661 (Tenn. 2007). When the import of a statute is unambiguous, we discern legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming,* 19 S.W.3d 195, 197 (Tenn. 2000); *see also*

4

*In re Adoption of A.M.H.,* 215 S.W.3d 793, 808 (Tenn. 2007) ("Where the statutory language is not ambiguous . . . the plain and ordinary meaning of the statute must be given effect.") (citing *Calaway ex rel. Calaway v. Schucker,* 193 S.W.3d 509, 516 (Tenn. 2005)). The construction of a statute is also a question of law which we review de novo without any presumption of correctness. *Lind,* 356 S.W.3d at 895.

*Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307-08 (Tenn. 2012).

In *Arden v. Kozawa*, 466 S.W.3d 758, 763 (Tenn. 2015), our Supreme Court clarified:

> The content and affidavit requirements of Tennessee Code Annotated sections 29-26-121(a)(2), (a)(3), and (a)(4) are not mandatory, but directory, and can be achieved through substantial compliance. *See Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC,* 433 S.W.3d 512, 520 (Tenn. 2014) (allowing substantial compliance with the affidavit requirement under Tennessee Code Annotated sections 29-26-121(a)(3)(B) and (a)(4)); *Stevens ex rel. Stevens v. Hickman Comm. Health Care Servs., Inc.*, 418 S.W.3d 547, 555 (Tenn. 2013) (allowing substantial compliance with the HIPAA form requirement under Tennessee Code Annotated section 29-26-121(a)(2)(E)). "[U]nless strict compliance with a notice content requirement 'is essential to avoid prejudicing an opposing litigant,' substantial compliance with a content requirement will suffice." *Thurmond,* 433 S.W.3d at 520 (quoting *Stevens,* 418 S.W.3d at 555).

The High Court has also explained that to determine whether a plaintiff has substantially complied with a statutory requirement, "a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." *Stevens ex rel. Stevens v. Hickman Comm. Health Care Servs., Inc.*, 418 S.W.3d 547, 556 (Tenn. 2013).

### III. Notice Requirements of Tennessee Code Annotated § 29-26-121

Tennessee Code Annotated § 29-26-121 provides in pertinent part:

(a)(1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

(2) The notice shall include:

> (A) The full name and date of birth of the patient whose treatment is at issue;
>
> (B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;
>
> (C) The name and address of the attorney sending the notice, if applicable;
>
> (D) A list of the name and address of all providers being sent a notice; and
>
> (E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

* * *

(b) If a complaint is filed in any court alleging a claim for health care liability, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.

In this case, the trial court determined that Ms. Piper had failed to comply with Tennessee Code Annotated § 29-26-121(a)(2)(D) and (E) and that such failure was fatal to her claims. In her appellate brief, Ms. Piper concedes that she did not list all medical providers on her pre-suit notice letters and did not include with the notice letters a "HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." *See* Tenn. Code Ann. § 29-26-121(a)(2)(D) and (E). Ms. Piper argues, however, that (1) her provision of a medical release to the defendant physicians a few months before the pre-suit notice letters were sent should constitute substantial compliance and (2) the failure to attach the required medical authorization to the pre-suit notice letters or to list the names of all medical providers on the notice letters should be considered "excusable neglect."

As our Supreme Court has explained:

> [T]the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(D) [list of names and addresses of all providers being sent notice] and Tenn. Code Ann. § 29-26-121(a)(2)(E) [HIPAA-compliant medical authorization] serve an investigatory function, equipping defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early discovery of potential co-defendants and early access to a plaintiff's medical records.

*Stevens*, 418 S.W.3d at 554. Therefore, Ms. Piper's failure to provide to Defendants (1) a list of other medical providers being sent notice and (2) a HIPAA-compliant medical authorization would prohibit Defendants from obtaining medical records from other co-defendants and utilizing their own records to mount a defense. *Id*.; *see also Roberts v. Prill*, No. E2013-02202-COA-R3-CV, 2014 WL 2921930, at *5 (Tenn. Ct. App. June 26, 2014) ("Defendants were not legally authorized to *use* the pertinent medical records to mount a defense, despite the fact that the records may have already been in their possession.") (emphasis in original). We conclude that Ms. Piper's errors and omissions in this matter were significant and that the Defendants were prejudiced thereby.

Ms. Piper asserts that she provided Dr. Kabasakal and Dr. Zeino with a HIPAA-compliant medical authorization prior to the transmittal of the pre-suit notice letters.[3] The record contains a copy of these disclosure authorizations, bearing a date of March 1, 2015, demonstrating that they were not included with the pre-suit notices as required by the statute. Assuming, *arguendo*, that mailing a medical authorization to a medical defendant some months prior to the actual dispatch of a pre-suit notice letter could constitute substantial compliance with Tennessee Code Annotated § 29-26-121(a)(2)(E), we determine that the authorizations sent by Ms. Piper were nonetheless noncompliant. The disclosure authorizations signed by Ms. Piper allowed disclosure of Decedent's protected health information only to Ms. Piper's counsel. The precedent on this issue is clear that such a limited authorization does not satisfy the requirements of the statute because it does not allow the health care providers to obtain medical records from one another and does not allow the health care providers to use the medical records in their own possession to prepare a defense. *See Stevens*, 418 S.W.3d at 554; *Roberts*, 2014 WL 2921930, at *5. Furthermore, Defendants were also provided no means of learning the identity of any potential co-defendants. We determine this argument to be unavailing.

Ms. Piper also argues that her noncompliance with the statute should be considered "excusable neglect" because the attorney who prepared the notices was

---

[3] The record is devoid of a medical disclosure authorization directed to CMC.

inexperienced and because allegedly the actions of the defendants resulted in Decedent's death. In support of her argument, Ms. Piper relies upon Tennessee Rule of Civil Procedure 60. We note, however, that no motion seeking Rule 60 relief was ever filed with the trial court. Furthermore, at the hearing conducted on January 29, 2016, regarding the Defendants' motions to dismiss, there was no discussion by Ms. Piper's counsel of Rule 60 or any alleged excusable neglect. We also note that Tennessee Code Annotated § 29-26-121(b) provides trial courts with discretion to excuse compliance only for "extraordinary cause shown" and makes no mention of excusable neglect. Despite this provision in the statute, Ms. Piper raised no issue with regard to extraordinary cause at the trial court level.[4] We therefore conclude that this issue has been waived. *See Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991) ("[T]his issue was not raised in the trial court, and issues not raised in the trial court cannot be raised for the first time on appeal.").

## IV. Conclusion

For the foregoing reasons, we affirm the trial court's dismissal of Ms. Piper's health care liability claims against all Defendants for failure to substantially comply with the requirements of Tennessee Code Annotated § 29-26-121(a)(2)(D) and (E). Costs on appeal are taxed to the appellant, Roberta Piper. We remand this case to the trial court for collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[4] A patient's death has specifically been found not to constitute extraordinary cause, *see Stevens*, 418 S.W.3d at 559, as has an attorney's oversight, *see Hawkins v. Martin*, No. W2013-02102-COA-R3-CV, 2014 WL 2854256, at *9 (Tenn. Ct. App. June 23, 2014), even when the attorney was faced with somewhat stressful conditions.