IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 27, 2024 Session

## MOYE JONES, ET AL. v. CATHLEEN M. CRADDOCK

Appeal from the Circuit Court for Sumner County
No. 83CC1-2020-CV-222  Joe Thompson, Judge

_____

No. M2023-01034-COA-R3-CV
_____

This auto accident case involves an insurer's claim that its limit of liability for uninsured motorist coverage should be offset due to the availability of payable workers' compensation benefits. The trial court granted summary judgment to the insurer. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Stan Davis, Brentwood, Tennessee, for the appellants, Moye Jones and Katherine Jones.

Hayley E. Vos and David B. Scott, Nashville, Tennessee, for the appellee, Erie Insurance Exchange.

## OPINION

### I.   FACTS & PROCEDURAL HISTORY

Moye and Katherine Jones filed this lawsuit against Cathleen Craddock after Mr. Jones and Ms. Craddock were involved in an auto accident. The complaint stated that the plaintiffs were also serving their uninsured motorist carrier, Erie Insurance Exchange. Erie filed an answer, admitting that the plaintiffs were covered by an insurance policy with Erie that was in force at the time of the accident and provided uninsured motorist coverage of $50,000 for a single injury. However, Erie asserted that it was only responsible for its limits of liability less all appropriate setoffs pursuant to its insurance policy.

Erie subsequently filed a motion for summary judgment. Erie noted that Mr. Jones was injured while in the course and scope of his employment with ABC Holdings, Inc. Erie claimed that the work injury was accepted as a compensable workers' compensation claim by Mr. Jones's employer and its carrier, Strategic Comp. According to Erie, the employer had provided workers' compensation benefits to Mr. Jones for about three weeks. However, Erie claimed that "[w]ithout knowledge/notice to [his employer,] [Mr. Jones] continued to treat outside of the workers' compensation program and incurred medical bills." Erie relied on the following provision of its uninsured motorist policy:

**Reductions**

The limits of protection available under this Uninsured Motorists Coverage will be reduced by:
. . .
2.    the amounts paid *or payable* under any workers' compensation, disability benefits or similar law.

(emphasis added). Erie argued that Mr. Jones had a compensable workers' compensation claim stemming from the accident but "decided" to treat outside the program, so "the undisputed facts" showed that his medical bills were "payable" under workers' compensation. Because the plaintiffs were claiming over $300,000 in medical bills, exceeding the $50,000 limit of the policy, Erie claimed that it had "no exposure" and should be dismissed from the lawsuit. Erie relied on *Dwight v. Tennessee Farmers Mutual Insurance Co.*, 701 S.W.2d 621, 622 (Tenn. Ct. App. 1985), in which this Court held that a plaintiff who was aware of her right to proceed under workers' compensation coverage of her employer and voluntarily refused to assert a claim against her employer had unilaterally waived her right to workers' compensation benefits, but the uninsured motorist insurer was nevertheless entitled to its offset because "benefits were available to the plaintiff" if only she had elected to take them.

In support of its motion for summary judgment, Erie submitted a statement of undisputed facts, the insurance policy and declarations, deposition testimony of Mr. Jones, and an affidavit of Dara Bishop, the Senior Subrogation Claim Specialist with Strategic Comp. In his deposition testimony, Mr. Jones testified that his normal duties included picking up and delivering materials and that he was "on the job" when the accident happened. Thus, Mr. Jones admitted that he was in the course and scope of his employment at the time of the accident. In Ms. Bishop's affidavit, she described her role at Strategic Comp, the company that provided workers' compensation insurance to Mr. Jones's employer when he was injured. She stated that his injury was accepted as a compensable claim and that medical treatment was provided to Mr. Jones through the workers' compensation program from May 27 until June 18, 2019. Ms. Bishop added, "Without knowledge to Strategic Comp, Moye Jones continued to treat without authorization through

the workers' compensation program and incurred medical bills, including a surgery." She stated that Mr. Jones filed this lawsuit as a result of the accident "for which Strategic Comp initially paid benefits" and that Strategic Comp had a lien in the amount of $1,571.79.[1]

The plaintiffs filed a response in opposition to the motion for summary judgment, along with an affidavit of a Nashville attorney, an affidavit of a medical director from the office where he had surgery, an additional affidavit from Ms. Bishop at Strategic Comp, and additional testimony from the deposition of Mr. Jones. The additional deposition testimony included the following exchange between Mr. Jones and his attorney:

Q. You were asked about these workers' comp benefits.
A. Yes.
Q. You gave notice to your employer, they sent you to Concentra; is that true?
A. Um-hum.
Q. Is that yes?
A. Yes. Sorry.
Q. You accepted medical care, you went to Concentra, did what they told you to do.
A. Yes.
Q. Concentra released you. Your work comp case was closed. Is that a fair assessment?
A. Yes.
Q. You received all the medical benefits that were offered or provided to you under the workers' compensation statute; is that correct?
A. I believe so, yes.

In the medical director's affidavit, he explained that he was employed by the orthopedic group and doctor who performed surgery for Mr. Jones as a result of the accident. The medical director stated that "Mr. Jones had received all compensable authorized care under the Workers' Compensation Act before seeing our office for treatment." He added, "We were not, nor never would have been, a panel physician in this case because we have never been on a Workers' Compensation panel for Strategic Comp." The medical director stated, "We billed Mr. Jones'[s] health insurance because this procedure was not authorized and approved by Workers' Compensation, and never would have been."

---

[1] For purposes of summary judgment, it was undisputed that the uninsured motorist policy provided $50,000 per person per crash limits, the primary carrier for the at fault party represented that the defendant had $25,000 per person per crash limits, and the uninsured motorist carrier was entitled to a credit of $25,000 from payments made by the tortfeasor. It was also undisputed that the workers' compensation carrier would recover $1,571.79 from the initial $25,000 paid by the tortfeasor's carrier to satisfy its subrogation. Thus, the plaintiffs took the position that the uninsured motorist carrier had a liability of $25,000 if damages were found to exceed $50,000. In their brief on appeal, the plaintiffs state that Erie "is entitled to an offset of $1,571.79 by statute and no more and has a responsibility of an additional $25,000."

The additional affidavit of Ms. Bishop stated that Mr. Jones had "received authorized medical care under the Tennessee Workers Compensation Statute" with two providers. It then stated,

> Mr. Moye Jones was provided all authorized and approved workers' compensation care and benefits under the Tennessee Workers' Compensation Statute and our subrogation interest is $1,571.79. We have followed the Tennessee Workers' Compensation Statute and have paid all authorized and approved benefits under the statute in this matter.
> [] The file was closed as Mr. Moye Jones has received all benefits to which he was entitled under the Workers' Compensation Statute.

Finally, the plaintiffs relied on the affidavit of a Nashville attorney who stated that he had handled auto accident and workers' compensation cases for the past thirty years. The attorney stated that he had reviewed the Jones file and that Mr. Jones "did everything that was required of him under the Workers Compensation Act and accepted all benefits he was entitled to under the Workers Compensation Act before being released from the authorized treating doctors for his employer." He stated that Mr. Jones "fully complied with the workers compensation carrier, accepted all benefits available to him under the Workers Compensation Act, and was free to seek care outside the workers compensation treatment provided." The plaintiffs also responded to Erie's statement of undisputed facts and submitted an additional statement of their own. Erie filed a reply. Erie reiterated that Strategic Comp had no knowledge of the continued treatment. Thus, Erie suggested that all treatment would have been paid under Strategic Comp's workers' compensation coverage, but "for whatever reason," Mr. Jones decided to seek treatment elsewhere and denied the workers' compensation carrier an opportunity to even consider authorizing the treatment.

After a hearing, the trial court entered an order granting summary judgment to Erie. Even considering the evidence in the light most favorable to the plaintiffs, the trial court found no genuine issue of material fact. The trial court concluded that Erie was entitled to reduce its limits by the workers' compensation benefits paid *or payable* to Mr. Jones, "notwithstanding [his] voluntary waiver of benefits," in accordance with the *Dwight* case. Because the amount of payable workers' compensation benefits exceeded the uninsured limits available to the plaintiffs, the court found that Erie was entitled to dismissal of the claims against it.

The trial court entered an order granting the plaintiffs permission to seek an interlocutory appeal to this Court, but the order did not state any specific issue for review. Thus, this Court remanded for entry of an order identifying the issue the court was certifying for appeal in accordance with Tennessee Rule of Appellate Procedure 9. Before the entry of such an order, however, the plaintiffs and the defendant entered into an agreed

order of compromise resolving the outstanding issues between them. The order states that the time period for appealing the order granting summary judgment to Erie would commence to run as of the date of the agreed order.[2] Thereafter, the plaintiffs filed a notice of appeal to this Court.

## II. ISSUES PRESENTED

The plaintiffs present four separate issues on appeal, but their brief does not separately discuss each one. From our review of the record, the determinative issue is whether the trial court erred in granting summary judgment to Erie on the basis that additional workers' compensation benefits were payable to Mr. Jones but he voluntarily waived them.

For the following reasons, we reverse and remand for further proceedings.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's decision on a motion for summary judgment de novo with no presumption of correctness. *Lemon v. Williamson Cty. Sch*., 618 S.W.3d 1, 12 (Tenn. 2021) (citing *Tatham v. Bridgestone Ams. Holding, Inc*., 473 S.W.3d 734, 748 (Tenn. 2015)). "The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry. Co*., 271 S.W.3d 76, 83 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). However, "'[t]he evidence must be viewed in a light most favorable to the claims of the nonmoving party, with all reasonable inferences drawn in favor of those claims.'" *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019) (quoting *Rye v. Women's Care Ctr. Of Memphis, MPLLC*, 477 S.W.3d 235, 286 (Tenn. 2015)). "If the undisputed facts support only one conclusion and that conclusion entitles the moving party to a judgment, then the trial court's grant of summary judgment is affirmed." *In re Est. of Cone*, 652 S.W.3d 822, 826 (Tenn. Ct. App. 2022).

## IV. DISCUSSION

In Tennessee, "it is clear that an insured party's right to recover under an uninsured

---

[2] The agreed order states that Erie was not a party to the agreed order but that Erie had agreed that the settlement did not prejudice the plaintiffs' remedies under the uninsured motorist policy or their right to appeal the summary judgment order in favor of Erie and collect additional money from Erie if the appeal was successful. Erie does not raise any issues on appeal regarding the effect of the agreed order.

motorist policy that contains a setoff provision such as the one involved in this case may be reduced by the amount that the insured *has collected, or could collect*, under the Workers' Compensation Law." *Hudson for Ben. of Hudson v. Hudson Mun. Contractors, Inc.*, 898 S.W.2d 187, 189 (Tenn. 1995) (emphasis added). For instance, in *Sherlin v. Hall*, 237 S.W.3d 647, 651 (Tenn. Ct. App. 2007), this Court affirmed summary judgment in favor of an insurer when there were no genuine issues of material fact and the record showed that the plaintiff "*has received or is entitled to receive* workers' compensation benefits in excess of the limits of liability of her uninsured motorist policy." (emphasis added).

Returning to the language of the Erie policy in this case, it provided that "[t]he limits of protection available under this Uninsured Motorists Coverage will be reduced by . . . the amounts *paid or payable* under any workers' compensation, disability benefits or similar law." (emphasis added). Several Tennessee cases have examined whether workers' compensation benefits were "payable" within the meaning of similar provisions. We begin by examining *Dwight v. Tennessee Farmers Mutual Insurance Co.*, 701 S.W.2d 621 (Tenn. Ct. App. 1985), which the trial court found controlling in this case. In *Dwight*, the plaintiff was acting within the scope of her employment with a hospital when she was injured in an auto accident with an uninsured vehicle. The plaintiff filed suit against the other driver and sought to recover from the uninsured motorist insurer. *Id.* However, the plaintiff "was aware of her right to proceed under the workers compensation coverage of [the hospital] and voluntarily refused to assert a claim against her employer." *Id.* at 622. The trial court held that the uninsured motorist insurer was still entitled to the offset because the plaintiff had "waived her right to collect workers' compensation benefits from her employer." *Id.* On appeal, this Court recognized that such offset provisions are valid under Tennessee law. *Id.* The plaintiff argued that she had not made any claim for workers' compensation, did not collect any benefits, and her right to recover under workers' compensation had already expired by the time she obtained her judgment. *Id.* Nevertheless, this Court explained:

> The setoff provisions entitle the insurance company to set off workers' compensation benefits actually paid and those that are payable. "Payable" is defined as "that must or may be paid". [*Oxford American Dictionary* (Avon), at p.656.] The plaintiff's unilateral waiver of benefits may not operate to increase the contractual obligations of the insurer. The policy provision operates to reduce the coverage where the "benefits are available". *Terry* [*v. Aetna Cas. & Surety Co.*, 510 S.W.2d 509 (Tenn. 1974)]. The record establishes the benefits were available to the plaintiff and, for whatever reason, she elected not to take them.

*Id.*

In *Williams v. Prewitt*, No. 01-A-019207CV00272, 1992 WL 353133 (Tenn. Ct. App. Dec. 2, 1992), this Court further examined the meaning of "payable" in this context.

- 6 -

In that case, the issue was "whether, under the limiting provisions of uninsured motorist coverage, an insurer can claim deductions for uncertain future benefits to be received[.]" *Id.* at *1. The uninsured motorist carrier argued that it was entitled to a reduction in its liability to the extent of the plaintiff's entitlement to disability payments from his employer under a city ordinance providing such benefits to its employees. *Id.* Evidence was presented demonstrating that the plaintiff had already received $7,914.16 from the city, and the trial court allowed this amount as a credit upon the liability of the insurer. *Id.* However, the trial court held that the plaintiff's "uncertain future benefits" were not deductible because they could not be ascertained. *Id.* On appeal, we concluded that the city ordinance was "similar law" to workers' compensation within the meaning of the policy provision. *Id.* We also noted that the policy allowed a reduction for benefits that were "paid or payable." *Id.* The insurer argued that the employee's "anticipated future payments" from the city were "payable" within the meaning of the policy. *Id.* at *2. We did not agree. We concluded that "ascertainable payments" were allowable as a credit, but not the uncertain future payments. *Id.* Under the ordinance, the employee was entitled to receive monthly payments until age 65 unless he died or recovered from the disability first. *Id.* Thus, the trial court had noted that it could not determine how much the plaintiff would receive from these benefits without using speculation or conjecture. *Id.* at *3. We explained,

> "Payable" means capable of being paid; suitable to be paid; admitting or demanding payment justly due; legally enforceable. *In Re: Advisory Opinion to the Governor*, 74 Fla. 250, 77 So. 102 (1917).
>
> A sum of money is said to be payable when a person is under an obligation to pay it. Payable may therefore signify an obligation to pay at a future time, but, when used without qualification, it means that the debt is payable at once, as opposed to "owing." *Sweets Law Dictionary.*
>
> A sum of money is said to be payable when there is an obligation to pay it. *Jamouneau v. Harner*, 16 N.J. 500, 109 A.2d 640 (1954).
>
> A person who borrows money or buys goods immediately "owes" the sum borrowed or the price of the goods, but the debt is not "payable" until the arrival of the date agreed upon for payment. *United Brotherhood of Carpenters and Joiners of America v. McLain*, D.C.Mun.App.1946, 46 A.2d 373.
>
> The word "due" is only equivalent to "payable." *Ball v. Northwestern Mut. Acc. Assn.*, 56 Minn. 414, 57 N.W. 1063 (1894).

*Id.* We acknowledged that in the *Dwight* case, this Court had utilized "a slightly different definition of 'payable,'" but we emphasized that the *Dwight* case applied that definition

"to a situation in which payments were available, but waived." *Id.* "In the present case," we explained, "there has been no waiver; and the availability of payments is contingent upon continued life and disability." *Id.* We found no authority that would allow a credit based upon "future, uncertain and unascertained facts." *Id.* at *4.

Two more recent cases applying *Dwight* are also instructive. In *Cooper v. Powers*, No. E2011-01065-COA-R9-CV, 2011 WL 5925062, at *1 (Tenn. Ct. App. Nov. 29, 2011), this Court considered whether an insurer was entitled to an offset for "payable" workers' compensation benefits after the plaintiff had entered into a settlement agreement resolving her claim. The plaintiff in that case actually had two separate workers' compensation claims against her employer – one arising from an auto accident and one from a separate back injury. *Id.* at *2. The plaintiff entered into a settlement resolving both of her workers' compensation claims. *Id.* at *1. When the uninsured motorist insurer claimed an offset corresponding to the workers' compensation benefits to which she was entitled, the plaintiff claimed that she did not actually receive any benefits for the auto accident injury and that all of the benefits she received were paid solely for the back injury. *Id.* at *3. The trial court held that if the plaintiff did not in fact receive any benefits for the injury under her settlement, it was because she voluntarily waived them, as she was clearly aware of her workers' compensation claim and that benefits were "available." *Id.* Thus, the trial court held that the outcome was controlled by *Dwight*. *Id.* at *4. On appeal, we affirmed. We explained that even if she received no benefits for the injury, "there is nothing in the present record to show that, up through entry of the judgment approving the workers' compensation settlement, she was not *entitled* under the law to receive benefits as a result of her injury." *Id.* at *9 (emphasis added). To the contrary, she had acknowledged that her injury was in the course and scope of her employment "and was therefore 'subject' to workers' compensation." *Id.* We saw no reason to treat "an employee's waiver by failing to assert a claim, as in *Dwight*, . . . any differently, for the purpose of a UM policy offset, from a waiver by judgment that acknowledges a claim but fails to expressly award any benefits." *Id.* "[B]ased on the undisputed facts in this record," we concluded that the plaintiff "could have collected medical and other workers' compensation benefits as a result of her injury in the automobile accident." *Id.* Thus, we found that "*Dwight* controls the present case" and affirmed partial summary judgment for the insurer. *Id.*

Finally, in *Wohlfahrt v. Scavuzzo*, No. W2002-02641-COA-R3-CV, 2004 WL 541145, at *1 (Tenn. Ct. App. Mar. 16, 2004), an uninsured motorist insurer argued that the trial court erred by not applying an offset for workers' compensation benefits. The insurer argued that the plaintiff "did not pursue workers' compensation benefits from his employer" but that the employee's "failure to pursue benefits does not prevent application of the workers' compensation offset for injuries occurring within the course and scope of employment." *Id.* at *2. This Court recognized that amounts due to an insured under an uninsured motorist policy may be offset by workers' compensation benefits, and "such an offset is allowed for workers' compensation benefit amounts for which the insured was eligible but did not pursue." *Id.* (citing *Dwight*, 701 S.W.2d at 622). However, the insurer

cited no evidence in the record to show that the plaintiff "was entitled to workers' compensation benefits and that he failed to pursue benefits for which he was eligible." *Id.* We explained that the "threshold issue" was whether the plaintiff "was entitled to any workers' compensation benefits" such that the insurer's liability would be offset by those benefits. *Id.* Even assuming arguendo that the plaintiff's injuries occurred during the course and scope of his employment, there was "no evidence in the record to establish [the plaintiff] would have been *entitled to* workers' compensation benefits." *Id.* at *3 (emphasis added). The only evidence in the record that pertained to workers' compensation was the plaintiff's uncontradicted affidavit stating that as part owner of the LLC he was excluded from the workers' compensation insurance policy, he did not make a workers' compensation claim, he was not paid any compensation for injuries sustained in the accident, and he was not due any workers' compensation benefits. *Id.* We noted that officers of a corporation may elect to be exempt from operation of the workers' compensation law. *Id.* As such, we found that the case before us was "distinguishable from the circumstances in *Dwight*, where the insured was entitled to workers' compensation benefits but failed to pursue them." *Id.* The undisputed facts in the record showed that no workers' compensation benefits were "properly payable" to the plaintiff. *Id.*

Keeping these principles in mind, we return to the facts of the case before us. Erie moved for summary judgment claiming that the "undisputed facts" showed that Mr. Jones's bills were "payable" through workers' compensation. Erie relied on the deposition testimony of Mr. Jones, admitting that he was on the job and in the course and scope of his employment when the accident occurred. It also relied on the affidavit of Ms. Bishop from Strategic Comp, who stated that the injury was accepted as a compensable claim, Strategic Comp provided medical treatment to Mr. Jones through the workers' compensation program from May 27 until June 18, 2019, and "[w]ithout knowledge to Strategic Comp, Moye Jones continued to treat without authorization through the workers' compensation program[.]"

In response to the motion for summary judgment, the plaintiffs submitted testimony from several individuals. First, Mr. Jones testified in his deposition that he "accepted medical care," "went to Concentra," and "did what they told [him] to do." He testified that Concentra released him and that his workers' compensation case was closed. When asked if he "received all the medical benefits that were offered or provided to you under the workers' compensation statute," he replied, "I believe so, yes." The medical director likewise stated that "Mr. Jones had received all compensable authorized care under the Workers' Compensation Act before seeing our office for treatment." Without elaboration, he stated that the office had never been on a Workers' Compensation panel for Strategic Comp and "billed Mr. Jones'[s] health insurance because this procedure was not authorized and approved by Workers' Compensation, and never would have been." The additional affidavit of Ms. Bishop, from Strategic Comp, stated,

[] Mr. Moye Jones was provided all authorized and approved workers' compensation care and benefits under the Tennessee Workers' Compensation Statute and our subrogation interest is $1,571.79. We have followed the Tennessee Workers' Compensation statute and have paid all authorized and approved benefits under the statute in this matter.

[] The file was closed as Mr. Moye Jones has received all benefits to which he was entitled under the Workers' Compensation Statute.

Finally, Plaintiffs relied on the affidavit of the attorney who stated that Mr. Jones "did everything that was required of him under the Workers Compensation Act and accepted all benefits he was entitled to under the Workers Compensation Act before being released from the authorized treating doctors for his employer." He stated that Mr. Jones "fully complied with the workers compensation carrier, accepted all benefits available to him under the Workers Compensation Act, and was free to seek care outside the workers compensation treatment provided."

The trial court concluded that there were "no genuine issues of material fact" and that benefits were "payable" to Mr. Jones "notwithstanding [his] voluntary waiver of benefits," in accordance with the *Dwight* case. However, this case presents a different factual situation because *Dwight* involved a plaintiff who was aware of her right to proceed under the workers compensation coverage of her employer and voluntarily refused to assert a claim against her employer. 701 S.W.2d at 621. Here, Mr. Jones did assert a claim against his employer. Erie emphasizes the fact that Mr. Jones continued to seek treatment thereafter "without knowledge" of Strategic Comp. However, the supplemental affidavit of Ms. Bishop, from Strategic Comp, states that Mr. Jones "was provided all authorized and approved workers' compensation care and benefits under the Tennessee Workers' Compensation Statute," Strategic Comp "paid all authorized and approved benefits under the statute," and "[t]he file was closed as *Mr. Moye Jones has received all benefits to which he was entitled under the Workers' Compensation Statute*." (emphasis added).

As this Court explained in *Wohlfahrt*, "an offset is allowed for workers' compensation benefit amounts for which the insured was eligible but did not pursue." 2004 WL 541145, at *2 (citing *Dwight*, 701 S.W.2d at 622). However, the threshold issue was whether the plaintiff "was entitled to" workers' compensation benefits such that the insurer's liability would be offset by those benefits. *Id.*; *see also Sherlin*, 237 S.W.3d at 651 (affirming summary judgment for the insurer when there were no genuine issues of material fact and the record showed that the plaintiff "has received or is entitled to receive workers' compensation benefits in excess of the limits of liability of her uninsured motorist policy"). In *Wohlfahrt*, we explained that even assuming arguendo that the injuries occurred during the course and scope of employment, there was no evidence to show that the plaintiff "was *entitled to* workers' compensation benefits and that he failed to pursue benefits *for which he was eligible*." 2004 WL 541145, at *2-3 (emphasis added). As such, the case was "distinguishable from the circumstances in *Dwight*, where the insured was

entitled to workers' compensation benefits but failed to pursue them." *Id.* at *3.

We acknowledge that the limited record before us does not reveal many of the underlying facts, and due to conclusory language used in the affidavits, it is not entirely clear why, according to Ms. Bishop, Mr. Jones had "received all benefits to which he was entitled." However, "[a] grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." *Starr v. Hill*, 353 S.W.3d 478, 481 (Tenn. 2011) (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)). At the very least, viewing the evidence in the light most favorable to the plaintiffs, as we must do at this stage, we conclude that genuine issues of material fact remain as to whether Mr. Jones was entitled to additional workers' compensation benefits and failed to pursue them, constituting a voluntary waiver of benefits. We cannot say that a reasonable person could reach only the conclusion that workers' compensation benefits were payable to Mr. Jones. *Compare Cooper*, 2011 WL 5925062, at *9 (affirming summary judgment for the insurer based on undisputed facts showing that the plaintiff "could have collected" benefits, and noting "there [was] nothing in the present record to show that, up through entry of the judgment approving the workers' compensation settlement, she was not entitled under the law to receive benefits as a result of her injury"). Based on the record before this Court, at the summary judgment stage, more than one conclusion can reasonably be drawn from the evidence presented, precluding summary judgment.

## V. CONCLUSION

For the aforementioned reasons, we reverse the decision of the circuit court and remand for further proceedings. Costs of this appeal are taxed to the appellee, Erie Insurance Exchange, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE